[No. 52246-4. En Banc. May 22, 1986.]

THE STATE OF WASHINGTON, *Appellant*, v. DANATO RAND RUDY, *Respondent*.

*James R. Miller, Prosecuting Attorney,* for appellant.
*Kenneth G. Johnson,* for respondent.

DURHAM, J.—The State appeals the dismissal of one count of first degree burglary and three counts of first degree kidnapping against defendant Danato Rand Rudy. The trial court dismissed those counts on the basis that the State prosecution following Rudy's federal conviction for conspiracy to violate 18 U.S.C. § 1951 (1982) (the Hobbs Act) was barred by the double jeopardy provisions of RCW 10.43.040. We reverse, holding that the State prosecution for burglary and kidnapping does not constitute double jeopardy under RCW 10.43.040 and is, therefore, not prohibited.

This case involves an attempt to extort funds from the South Sound National Bank in Grand Mound, Washington. On April 23, 1982, defendant Danato Rand Rudy entered the home of the bank's manager, Douglas Patterson, while Patterson was at work at the bank. Rudy pointed a firearm at Patterson's wife and forced her and the couple's two young daughters, Julia, age 4, and Jana, age 14 months, to leave the home with him. Rudy and an accomplice then attempted to obtain funds from the bank in exchange for Patterson's family. That evening, Julia Patterson was found abandoned alone in a rock quarry near Olympia. Mrs. Patterson and the baby were not discovered until afternoon the following day. They were found in a remote wooded area in rural Thurston County. Mrs. Patterson was tied to a tree and the baby was placed on the ground. They had been left in this condition overnight.

Rudy was indicted in the United States District Court for three counts of interference with commerce by threats or violence under 18 U.S.C. § 1951 (1982). On May 20, 1983, Rudy pleaded guilty to count 1, conspiracy, and the other two counts of the indictment were dismissed. The federal court sentenced Rudy to 20 years in prison.

On June 14, 1983, the State charged Rudy with burglary in the first degree, RCW 9A.52.020(1), and three counts of kidnapping in the first degree with intent to inflict extreme mental distress, RCW 9A.40.020(1)(d). Rudy moved to dismiss the information on the ground that the State prosecu-

924

tion, following the federal conviction for the Hobbs Act violation, constituted double jeopardy. The trial court granted Rudy's motion to dismiss, concluding that the State prosecution was barred by the double jeopardy provisions of RCW 10.43.040. The State appeals this order.

■■ We begin our analysis by noting that no constitutional issue is involved in this case. Under the federal constitution, a federal prosecution does not bar a subsequent state prosecution of the same person for the same crime. *United States v. Wheeler*, 435 U.S. 313, 317, 55 L. Ed. 2d 303, 98 S. Ct. 1079 (1978); *Bartkus v. Illinois*, 359 U.S. 121, 136–38, 3 L. Ed. 2d 684, 79 S. Ct. 676 (1959). This rule is based on the "dual sovereignty" concept. The states and the federal government are sovereign entities, with the power independently to define and punish offenses against their authority. *Wheeler*, at 320.

States, however, may provide greater protection against double jeopardy. In Washington, this has been accomplished by statute. RCW 10.43.040 provides,

> Whenever, upon the trial of any person for a crime, it appears that the offense was committed in another state or country, under such circumstances that the courts of this state had jurisdiction thereof, and that the defendant has already been acquitted or convicted upon the merits, upon a criminal prosecution under the laws of such state or country, founded upon the act or omission with respect to which he is upon trial, such former acquittal or conviction is a sufficient defense.

While this statute explicitly refers only to prior prosecution by another state or country, we have construed it to include prosecution by the federal government also. *State v. Caliguri*, 99 Wn.2d 501, 512, 664 P.2d 466 (1983).

■ Initially, the State questions the application of RCW 10.43.040 to the present case at all. It argues that the phrase "under such circumstances that the courts of this state had jurisdiction thereof" means that the State must have had jurisdiction to prosecute the initial offense in order for the statute to apply. Employing that interpretation in the present case, the State contends that the state

court has no jurisdiction over a Hobbs Act offense, and therefore that this case is not within RCW 10.43.040. We disagree with the State's contention that RCW 10.43.040 only applies if the State has jurisdiction to prosecute the initial federal offense. As the trial court correctly reasoned, the application of the statute would be severely restricted if it were construed in this manner, because in many circumstances the State would lack authority to prosecute a federal offense. It is reasonable to interpret the jurisdictional language of the statute to refer to the acts which are the basis of the State charges, rather than to the initial offense. Thus, as long as the State has jurisdiction to charge a defendant based on the acts alleged, there is no jurisdictional impediment to the application of RCW 10.43.040. Here, since defendant's alleged acts were within the State's criminal jurisdiction, RCW 10.43.040 is applicable.

Having determined that there is no jurisdictional barrier to applying RCW 10.43.040 to this case, we must determine if the statute operates to bar the State prosecution. If the State prosecution is based on the same "act or omission" as the federal conviction, it is prohibited under RCW 10.43-.040. *Caliguri,* at 512.

In *Caliguri,* this court explained the meaning of the phrase "act or omission" as it is used in RCW 10.43.040. In that case, Caliguri had been convicted on a federal indictment for racketeering. Racketeering consists of two general elements: (1) a pattern of racketeering activity defined as at least two of several specific crimes including arson, and (2) a connection between that activity and an enterprise affecting interstate commerce. 18 U.S.C. §§ 1961, 1962 (1982). Subsequently, the State charged Caliguri with conspiracy to commit arson and conspiracy to commit murder. We held that the phrase "act or omission" in RCW 10.43-.040 focuses on identity "in fact" rather than identity "in law" of the offenses with which defendant was charged. *Caliguri,* at 513. We reasoned that it was proper for the statute to concentrate on fact alone instead of fact and law, because while different sovereigns may establish different

technical definitions of crimes, such variations may have little relevance to the interest protected. Therefore, RCW 10.43.040 bars state prosecution "for any offense which is *in fact alone* identical to or included within an offense for which a defendant has been previously prosecuted in another jurisdiction." (Italics ours.) *Caliguri,* at 514.

Applying these rules to the State prosecution of Caliguri, we held that the prosecution for conspiracy to commit arson constituted double jeopardy under RCW 10.43.040 because that charge was included in fact in the federal racketeering conviction. Conspiracy to commit arson was actually charged and proven as one of the crimes underlying the federal charge; therefore, it was in fact used in the federal prosecution. *Caliguri,* at 514. On the other hand, we held the conspiracy to commit murder charge was not included in fact in the federal offense and, thus, was not barred by RCW 10.43.040. That State charge "required proof of an act of a different character" than the federal charge, because it required proof of arson committed with premeditated intent to cause a particular person's death. *Caliguri,* at 514. We interpreted "act" in RCW 10.43.040 as including the mental state accompanying it. Since proof of conspiracy to commit murder required proof of mental state, an act of a different character than had to be proven in the federal prosecution, we concluded that the murder charge was not based on the same act or omission as the federal charge. *Caliguri,* at 514.

It is also significant that, in *Caliguri,* the same evidence relied upon in the State prosecution was also relied upon in the federal prosecution. *Caliguri,* at 503–04. The federal evidence included a taped conversation in which the defendant stated that "'the janitor's gonna go for sure'". *Caliguri,* at 504. This evidence was considered sufficient to infer an intent to kill the janitor and, thus, to prove the State charge of conspiracy to commit murder. *Caliguri,* at 506. Thus, in *Caliguri,* we allowed a State prosecution based on the same evidence used in the federal prosecution where the State had to prove an additional act (in that

case, mental state) beyond what the federal government was required to prove.

Having reviewed the principles developed in *Caliguri,* we now proceed to apply them to the present case. A violation of the Hobbs Act comprises two general elements: (1) interference with interstate commerce, (2) done by robbery, extortion or commission or threat of physical violence. 18 U.S.C. § 1951 (1982). In this case, the federal indictment specifically charged that Rudy conspired: (1) to obstruct, delay, and affect commerce by extortion, and (2) to commit and threaten physical violence to persons in furtherance of a plan or purpose to obstruct, delay, and affect commerce by extortion. When this offense is compared to the crimes with which the State charged Rudy, it becomes clear that the State prosecution did not constitute double jeopardy.

First, to prove that Rudy committed first degree burglary, the State would have to show that he entered or remained unlawfully in a dwelling and while in that dwelling or in immediate flight therefrom was armed with a deadly weapon or assaulted a person therein. RCW 9A.52-.020. Unlawful entry, however, was neither alleged in the federal indictment, nor would it have been used in fact to prove the Hobbs Act violation if the federal case had gone to trial. The indictment's statement of overt acts says nothing about unlawful entry. In addition, during the plea–taking hearing in the federal prosecution, the District Attorney did not specifically mention unlawful entry in describing what the government would show if the case went to trial. Thus, while the State would be required to prove that Rudy entered the Patterson home unlawfully to establish burglary, the federal government would not have relied on that fact to prove the federal offense. Proof of burglary therefore requires proof of an additional act beyond what would have been proven in the federal case. In other words, the State prosecution for burglary required proof of an act of a different character than the federal prosecution.

The same is true with respect to the State prosecution

for kidnapping. To prove the charge of first degree kidnapping, the State would have to show that Rudy intentionally abducted another person with intent to inflict extreme mental distress on a third person. RCW 9A.40.020(1)(d). The federal government would not, in fact, have had to prove abduction or intent to inflict mental distress in order to prove the Hobbs Act violation. First, neither the indictment's statement of overt acts nor the district attorney in the plea–taking hearing specifically said that Rudy intended to inflict extreme mental distress. That act would not have been used in fact to establish a Hobbs Act violation. Second, to "abduct" is to restrain a person by holding him in a place where he is not likely to be found or using or threatening to use deadly force. RCW 9A.40.010. The statement of overt acts did not describe any acts which would fall within this definition of "abduct". In the plea–taking proceeding, the district attorney did state that the evidence would show that a person matching Rudy's description had a firearm, kidnapped Mrs. Patterson and the two girls, chained Mrs. Patterson to a tree, and abandoned one child in a pit. Even if this conduct constitutes abduction, it does not appear that the prosecution in fact would have relied on abduction in order to prove the federal charge. The act of restraining the Pattersons was only incidental to the threat of physical violence in furtherance of a plan to interfere with commerce by extortion. In summary, two aspects of the State kidnapping charge, intent to inflict mental distress and abduction, would have been, at best, ancillary to proof of the federal charge of violation of the Hobbs Act. Thus, the kidnapping charge required proof of acts of a different character than would have been used to prove the federal charge.

In conclusion, we hold that the State prosecution for burglary and kidnapping was not prohibited by the double jeopardy provisions of RCW 10.43.040. Substantially the same evidence probably would be used in the State prosecution as would have been used in the federal prosecution had the federal case gone to trial. However, neither bur-

glary nor kidnapping was in fact identical to or included within the Hobbs Act offense for which Rudy was convicted. Rather, the State would have to prove acts of a different character to establish burglary and kidnapping than the federal government would have proven to establish the Hobbs Act violation. Since the State prosecution was not based on the same act as the federal conviction, it was not barred by RCW 10.43.040.

We reverse the trial court's dismissal of all counts in the information.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, and GOODLOE, JJ., concur.