15 P.3d 1058 (2001)
104 Wash.App. 153
STATE of Washington, Respondent,
v.
Anthony MOSES, Sr., Appellant.
State of Washington, Respondent,
v.
Brian Moses, Appellant.
Nos. 24365-2-II, 24445-4-II.
Court of Appeals of Washington, Division 2.
January 5, 2001.
As Amended on Denial of Reconsideration January 26, 2001.
*1059 John A. Hays, Longview, Alfred Arthur Bennett, Vancouver, for Appellants.
A.O. Denny, Cowlitz Co. Dep. Pros. Atty., Kelso, James Jay Stonier, Cowlitz County Prosecutor, Kelso, for Respondent.
A. Reid Allison, Office of Reservation Atty., Marysville, amicus curiae Tulalip Tribes.
MORGAN, J.
The defendants, Anthony Moses, Sr. and Brian Moses, appeal the Cowlitz County Superior Court's refusal to recognize their statutory double jeopardy claims under RCW 10.43.040. We affirm.
At all times material here, the defendants were members of the Tulalip Tribes.[1] The Tribes' reservation is in Snohomish County, about 150 miles from Cowlitz County.
On the night of February 19, 1998, in Cowlitz County, the defendants shot and killed five elk that were on private property posted with "No Trespassing" signs. The defendants fired from a vehicle on a public road, after illuminating the elk with a spotlight.[2] When a nearby property owner heard the shots and came to investigate, the defendants fled, leaving the dead elk behind.
On April 9, 1998, the State charged the defendants in Cowlitz County Superior Court. The charges included hunting out of season, wastage, shooting from a public road, and hunting with an artificial light.[3]
On or about June 10, 1998, the Tulalip Tribes charged the defendants in tribal court. Although based on tribal law instead of Washington law, the charges had essentially the same factual elements as the charges brought in the Cowlitz County Superior Court.
On October 20, 1998, defendant Anthony Moses, Sr. pled guilty in tribal court. He was fined $2,500 and lost his hunting license for at least one year. The record does not show that Brian was prosecuted or convicted, but it makes no difference to the case if we assume that he was.
On February 8, 1999, the defendants filed motions to dismiss the Cowlitz County prosecution. Relying on RCW 10.43.040, they argued that the tribal prosecution had put them in jeopardy once, and that the Cowlitz County prosecution was putting them in jeopardy again for the same offenses. They did not show that the Tulalip Tribes' aboriginal hunting grounds included the location where the elk were killed, or that the elk were killed on open and unclaimed land. On February 16, 1998, the superior court denied the motion to dismiss.
On February 17, 1998, following a bench trial, the superior court found both defendants guilty. At sentencing, the superior court fined each defendant approximately $2,500, suspended if each defendant paid the fines already ordered by the tribal court. The superior court also sentenced each defendant to 365 days in jail with credit for time served (75 days for Anthony and 34 days for Brian) and the balance suspended. After sentencing, each defendant appealed.
*1060 The question on appeal is whether the State can prosecute these defendants under state law for crimes committed in Cowlitz County, when the Tulalip Tribes have already prosecuted and convicted under tribal law for crimes with the same elements. The answer is yes, based on the lack of proof in this record.
Neither defendant relies on, nor could he rely on, the double jeopardy clause in the United States Constitution.[4] Although that constitution prevents one sovereign from prosecuting twice for the same offense,[5] it does not prevent a sovereign from prosecuting for an offense under its law merely because a separate sovereign has already prosecuted under its law for an offense with the same elements.[6] Thus, it does not prevent the State from prosecuting here, even if the Tulalip Tribes already have prosecuted for tribal offenses with essentially the same elements.[7]
Neither defendant relies on, nor could he rely on, the Washington State Constitution. Although that constitution prevents the State from prosecuting twice for the same offense,[8] it does not prevent the State from prosecuting for an offense under state law merely because a separate sovereign has already prosecuted under its law for an offense with the same elements.[9] Thus, it does not prevent the State from prosecuting here, even though the Tulalip Tribes may already have prosecuted.
Rather than relying on either constitution, each defendant relies on RCW 10.43.040. That statute provides:
Whenever, upon the trial of any person for a crime, it appears that the offense was committed in another state or country, under such circumstances that the courts of this state had jurisdiction thereof, and that the defendant has already been acquitted or convicted upon the merits, in a judicial proceeding conducted under the criminal laws of such state or country, founded upon the act or omission with respect to which he is upon trial, such former acquittal or conviction is a sufficient defense. Nothing in this section affects or prevents a prosecution in a court of this state of any person who has received administrative or nonjudicial punishment, civilian or military, in another state or country based upon the same act or omission.[[10]]
The Washington Supreme Court has interpreted this statute in several recent cases.[11] Essentially, it has construed the words, "in another state or country," to mean "within the territory of another sovereign." As a result, the statute's effect is as if it read as follows:
Whenever, upon the trial of any person for a crime, it appears that the offense was committed within the territory of another sovereign, under such circumstances that the courts of this state had jurisdiction thereof, and that the defendant has already been acquitted or convicted upon the merits, in a judicial proceeding conducted under the criminal laws of such other sovereign, *1061 founded upon the act or omission with respect to which he is upon trial, such former acquittal or conviction is a sufficient defense. Nothing in this section affects or prevents a prosecution in a court of this state of any person who has received administrative or nonjudicial punishment, civilian or military, in another state or country based upon the same act or omission.
Only one aspect of this statute is disputed here. It is whether the defendants committed their crimes within the territory of the Tulalip Tribes.
Because the defendants' crimes were hunting offenses, the Tribes' pertinent territory is the "geographic scope" of their right to hunt.[12] The Tribes retain their right to hunt on lands where they aboriginally and traditionally hunted, except to the extent that they have ceded such right by treaty.[13] The Tribes ceded part of their right to hunt when their predecessors in interest signed the 1855 Treaty of Point Elliott,[14] for that Treaty restricts the right to hunt to "open and unclaimed lands."[15] Accordingly, a tribal member is entitled to the protection of RCW 10.43.040 only if he or she shows[16] at least two facts: (1) that he or she was hunting within the Tribes' aboriginal hunting grounds, and (2) that he or she was hunting on "open and unclaimed lands."
The defendants in this case have failed to show either fact. Accordingly, they failed to establish statutory double jeopardy under RCW 10.43.040, and the superior court did not err by denying their motions to dismiss.[17]
We close with a caveat. Before this opinion issued, the State was arguing that RCW 10.43.040 did not apply because the offenses in issue were not committed within the Tulalip *1062 Tribes' territorial jurisdiction. In its brief on appeal, for example, the State said that "because [Moses] did not act on the Tulalip Tribes' reservationin another country judgments from the Tulalip Tribal [court] do not trigger" RCW 10.43.040. Respondent's Brief at 12.
After this opinion issued, the State filed a motion for reconsideration in which it claims for the first time, through a new attorney, that the Tulalip Tribes are neither a "state" nor a "country," but rather a sui generis type of sovereign entity. As a result, the State now argues, a tribal court judgment cannot trigger RCW 10.43.040, whether or not the offense in issue was committed within the tribe's territorial jurisdiction.
Although we decline to address this extremely tardy argument in this case, we also want to insure that it receives fair consideration if and when it is properly presented. Accordingly, we emphasize that we have assumed, but not considered or decided, that a tribe is a "state" or "country" within the meaning of RCW 10.43.040. We hold only that if a tribe is a "state" or "country" within the meaning of RCW 10.43.040, a party relying on the statute must show that the offense in issue was committed within the tribe's territorial jurisdiction.
Affirmed.
BRIDGEWATER, J., and HUNT, A.C.J., concur.
NOTES
[1] The record does not show that Brian was a member of the Tribes, but the Tribes' amicus brief suggests that he was. We will assume he was, because it makes no difference to the case.
[2] The defendants also shot and killed a number of deer, but Cowlitz County chose not to prosecute for those.
[3] An additional charge of animal cruelty was later dismissed and is not in issue here.
[4] U.S. CONST. amend. V.
[5] Burks v. United States, 437 U.S. 1, 18, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); Whalen v. United States, 445 U.S. 684, 689, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980).
[6] United States. v. Wheeler, 435 U.S. 313, 319-22, 324, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); Bartkus v. Illinois, 359 U.S. 121, 132, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); Abbate v. United States, 359 U.S. 187, 193, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); State v. Duncan, 111 Wash.2d 859, 868, 765 P.2d 1300 (1989); State v. Ivie, 136 Wash.2d 173, 178, 961 P.2d 941 (1998); State v. Rudy, 105 Wash.2d 921, 924, 719 P.2d 550 (1986).
[7] Wheeler, 435 U.S. at 317-18, 98 S.Ct. 1079. Congress has recognized the Tulalip Tribes as a sovereign since 1936. United States v. State of Washington, 459 F.Supp. 1020, 1039 (W.D.Wash. 1978).
[8] WASH. CONST. art. I, § 9.
[9] Ivie, 136 Wash.2d at 178, 961 P.2d 941; State v. Kenney, 83 Wash. 441, 443, 145 P. 450 (1915) (citing State v. Coss, 12 Wash. 673, 675, 42 P. 127 (1895)).
[10] (Emphasis added.) The last sentence was added in 1999, in response to Ivie, 136 Wash.2d at 178, 961 P.2d 941. Laws of 1999, ch. 141, § 1. The Ivie court held that prosecution by the state was barred following the imposition of nonjudicial military punishment.
[11] State v. Caliguri, 99 Wash.2d 501, 664 P.2d 466 (1983); Ivie, 136 Wash.2d 173, 961 P.2d 941; State v. Rudy, 105 Wash.2d 921, 719 P.2d 550 (1986); Duncan, 111 Wash.2d 859, 765 P.2d 1300.
[12] See State v. Buchanan, 138 Wash.2d 186, 192, 195, 198, 207, 978 P.2d 1070 (1999), cert. denied, 528 U.S. 1154, 120 S.Ct. 1158, 145 L.Ed.2d 1070 (2000).
[13] Buchanan, 138 Wash.2d at 202-03, 978 P.2d 1070. Relying on United States v. Winans, 198 U.S. 371, 381, 25 S.Ct. 662, 49 L.Ed. 1089 (1905), the Buchanan court states generally:

Under the reservation of rights doctrine, tribal members have possessed certain rights, such as hunting and fishing, from time immemorial. A treaty between a tribe and the United States documents a grant of some rights from the tribe to the federal government. However, those rights not expressly ceded in the treaty, as well as those expressly reserved, remain with the tribe.
Buchanan, 138 Wash.2d at 203, 978 P.2d 1070. The Buchanan court also states, more specifically, that "[t]he scope of a tribe's off-reservation hunting rights is generally found in an Indian tribe's aboriginal use of or title to land and its reservation of the right in a treaty, or by agreement, executive order or statute." Buchanan, 138 Wash.2d at 203-04, 978 P.2d 1070.
[14] The Tulalip Tribes state that they "are successors in interest to the signatories to the Treaty of Point Elliott." Amicus Brief at 8. The defendants do not disagree, and courts have treated the Tulalip Tribes as signatories. State of Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n, 443 U.S. 658, 662 n. 2, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979); State of Washington, 459 F.Supp. at 1039.
[15] Treaty Between the United States and the Dwamish, Suquamish, and other allied and subordinate Tribes of Indians in Washington Territory, Jan. 22, 1855, art. 5, 12 Stat. 927, 928 (Treaty of Point Elliott); Buchanan, 138 Wash.2d at 206-07, 978 P.2d 1070.
[16] A variety of cases hold that the one who makes a double jeopardy claim has the burden of proving the facts necessary to establish it. State v. Clark, 124 Wash.2d 90, 101, 875 P.2d 613 (1994) ("to prevail in a double jeopardy challenge, a defendant must not only show the existence of two `punishments'" but "must also affirmatively establish he or she has been punished twice for the same offense"), overruled on other grounds by State v. Catlett, 133 Wash.2d 355, 945 P.2d 700 (1997); State v. Ridgley, 70 Wash.2d 555, 557, 424 P.2d 632 (1967) ("one who asserts the bar of double jeopardy ... must affirmatively establish (1) that he has previously been placed on trial for the same offense and (2) that the court of the former trial was one of competent jurisdiction to hear and determine the merits of the cause.") (citing State v. Williams, 57 Wash.2d 231, 232, 356 P.2d 99 (1960)); State v. Hite, 3 Wash.App. 9, 11, 472 P.2d 600 (1970), review denied, 78 Wash.2d 995 (1970), cert. denied, 403 U.S. 933, 91 S.Ct. 2262, 29 L.Ed.2d 712 (1971).
[17] The defendants also make claims based on an "Interim Big Game Management Agreement" formed between the Western Washington Treaty Tribes and the State of Washington's Department of Wildlife. Such claims are meritless. The agreement could not restrict the enforcement of state law, for it lacks the force of law. Moreover, the agreement itself so recognizes: It provides that it "does not create rights or obligations for persons or entities other than the signatory parties," and that "the Department is without authority to control the enforcement practices of local law enforcement agencies and prosecutorial authorities." Clerk's Papers at 47, 50.