[No. 70742-1.   En Banc.]
Argued October 18, 2001.     Decided January 10, 2002.

THE STATE OF WASHINGTON, *Respondent*, v. ANTHONY MOSES, SR., *Petitioner*.

John A. Hays, for petitioner.

Susan I. Baur, Prosecuting Attorney, and A.O. Denny, Deputy, and Pamela B. Loginsky (of Washington Association of Prosecuting Attorneys), for respondent.

A. Reid Allison III on behalf of Tulalip Indian Tribe, amicus curiae.

Nancy L. Talner and Eric J. Nielsen on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae.

JOHNSON, J. — This case involves whether the double jeopardy statute, RCW 10.43.040, bars Cowlitz County from prosecuting a defendant previously convicted in tribal court for similar offenses based upon the same incident. Because Indian tribes are not among the sovereigns included within the statute's meaning, we hold it does not. We affirm the Court of Appeals on different grounds.

## FACTS

On February 19, 1998, petitioner Anthony Moses, Sr. (Moses), a registered member of the Tulalip Indian Tribes (Tulalip Tribes), shot and killed a number of elk at night with the aid of artificial light. The elk were on posted private property in Cowlitz County, which was closed for hunting under Washington law. When a nearby property owner heard the shots and investigated, Moses fled, leaving the dead elk behind. On April 9, 1998, the State brought charges against Moses in Cowlitz County Superior Court for hunting out of season, wastage, shooting from a public road, and hunting with an artificial light. Later, on June 10, 1998, the Tulalip Tribes brought charges against Moses for substantially the same offenses based upon the same event. Moses pleaded guilty in tribal court on October 20, 1998 and was fined $2,500 and prohibited from exercising his hunting privileges for at least one year.

Moses moved to dismiss the State's charges on the grounds they were barred by RCW 10.43.040, the double jeopardy statute. The Superior Court denied the motion, ruling RCW 10.43.040 did not bar the State's prosecution because the acts alleged did not occur within another state or country. Moses was then convicted on all charges brought by the State.

The Court of Appeals affirmed the trial court's ruling. *State v. Moses*, 104 Wn. App. 153, 15 P.3d 1058 (2001). The

Court of Appeals relied upon several cases interpreting RCW 10.43.040 to conclude the statute has been construed to extend to offenses committed "within the territory of another sovereign." *Moses*, 104 Wn. App. at 157. The court held RCW 10.43.040 did not bar the State's prosecution because the offenses did not occur within the territory of the Tulalip Tribes. *Moses*, 104 Wn. App. at 158-59. We granted Moses' petition for review.

## ANALYSIS

The statute at issue, RCW 10.43.040, provides:

> Whenever, upon the trial of any person for a crime, it appears that the offense was committed *in another state or country*, under such circumstances that the courts of this state had jurisdiction thereof, and that the defendant has already been acquitted or convicted upon the merits, in a judicial proceeding conducted under the criminal laws of such state or country, founded upon the act or omission with respect to which he is upon trial, such former acquittal or conviction is a sufficient defense. Nothing in this section affects or prevents a prosecution in a court of this state of any person who has received administrative or nonjudicial punishment, civilian or military, in another state or country based upon the same act or omission.

(Emphasis added.)[1]

This appeal raises two questions: (1) are Indian tribes among the sovereigns included within the statutory meaning of RCW 10.43.040?; and (2) if so, should the statute apply to Moses when the acts forming the basis of his offenses were not committed within the jurisdiction of the Tulalip Tribes?

The sovereign nature of Indian tribes is not disputed. Indian tribes are unique sovereigns. Indian tribes possess those attributes of sovereignty not withdrawn by treaty or

---

[1] RCW 10.43.040 was enacted in 1909, Laws of 1909, ch. 249, § 19, and included the same "in another state or country" language.

statute, or by implication because of their dependent status. *United States v. Wheeler*, 435 U.S. 313, 324, 98 S. Ct. 1079, 55 L. Ed. 2d 303 (1978). We have held Indian tribes to be truly sui generis, but possessing some of the powers and characteristics akin to those of other sovereigns. *Queets Band of Indians v. State*, 102 Wn.2d 1, 4, 682 P.2d 909 (1984). For example, tribes retain the sovereignty to create and prescribe laws for their members and to punish violations of those laws. *State v. Schmuck*, 121 Wn.2d 373, 381, 850 P.2d 1332 (1993). Neither the lower courts nor the parties deny the Tulalip Tribes' unique sovereign nature, but sovereignty without more will not necessarily include Indian tribes among the sovereigns covered by RCW 10.43.040.

We first determine whether the Legislature intended to include Indian tribes within the meaning of RCW 10.43.040. We apply principles of statutory construction to make this determination. Legislative intent is primarily revealed by the statutory language. *Duke v. Boyd*, 133 Wn.2d 80, 87, 942 P.2d 351 (1997). Where the Legislature omits language from a statute, intentionally or inadvertently, this court will not read into the statute the language that it believes was omitted. *Jenkins v. Bellingham Mun. Court*, 95 Wn.2d 574, 579, 627 P.2d 1316 (1981).

We engaged in a similar analysis when we answered a question certified from the Ninth Circuit Court of Appeals regarding whether Indian tribes were included within the legislative definition of "jurisdiction." *Queets*, 102 Wn.2d at 2. In that case, two Washington Indian tribes had adopted tribal licensing and registration systems for all tribal government vehicles. The Indian tribes, claiming they were jurisdictions within the meaning of Washington's reciprocal vehicle registration act (RCW 46.85.020), sued in federal court to have the State permanently enjoined from enforcing its vehicle licensing and registration laws as to vehicles licensed by the two tribes.[2] *Queets*, 102 Wn.2d at

---

[2] RCW 46.85.020(1) reads in pertinent part: " 'Jurisdiction' means and includes a state, territory, or possession of the United States, the District of Columbia, the

2-3. We determined Indian tribes were not included within the meaning of RCW 46.85.020 because they were not expressly included within its definition of "jurisdiction." We contrasted this omission with the Legislature's express inclusion of Indian tribes within other statutes. We found the silence of the Legislature telling and held it determinative. *Queets*, 102 Wn.2d at 5. RCW 10.43.040, the statute at issue in this case, is equally silent as to Indian tribes. This silence lends weight to the proposition that Indian tribes are not among the sovereigns within its meaning.

This proposition is reinforced by examining the historic context of RCW 10.43.040. When the statute was enacted in 1909, there were simply no circumstances where Washington might share concurrent jurisdiction with an Indian tribe. At that time, outside the boundaries of a tribal reservation, the State had exclusive nonfederal criminal jurisdiction. *United States v. Kagama*, 118 U.S. 375, 6 S. Ct. 1109, 30 L. Ed. 228 (1886). Similarly, within a tribal reservation, the State had no jurisdiction over tribal members, or even nonmembers, for criminal activity directed at tribal members. *Donnelly v. United States*, 228 U.S. 243, 33 S. Ct. 449, 57 L. Ed. 820 (1913). State jurisdiction within a tribal reservation was limited to crimes by nonmembers committed against other nonmembers. *United States v. McBratney*, 104 U.S. (14 Ott.) 621, 26 L. Ed. 869 (1881). Within a tribal reservation, an Indian tribe had no jurisdiction over nonmembers unless specifically granted by Congress or treaty. *See Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 98 S. Ct. 1011, 55 L. Ed. 2d 209 (1978). This examination, and the fact that no tribal courts existed in 1909 which were capable of exercising concurrent jurisdiction, adds further weight to the conclusion that RCW 10.43.040 did not apply to Indian tribes at the time it was enacted.

---

Commonwealth of Puerto Rico, a foreign country, and a state or province of a foreign country."

Since 1909, the Legislature has chosen not to amend RCW 10.43.040 to include Indian tribes. After this court answered the *Queets* certified question in the negative, the Legislature did not amend RCW 10.43.040 to include Indian tribes but did amend other statutes solely for that purpose. *See, e.g.*, LAWS OF 1999, ch. 287, § 2 (amending RCW 19.34.020 to include a definition for "official public business" to include "tribes"); LAWS OF 1994, ch. 160, § 4 (amending RCW 43.185A.040 to allow for housing assistance to federally recognized Indian tribes); LAWS OF 1986, ch. 30, § 1 (amending RCW 46.16.020 to extend exempt motor vehicle licensing to include federally recognized Indian tribes). The Legislature has also specifically included Indian tribes when enacting new laws intended to apply to them. *See, e.g.*, LAWS OF 2000, ch. 144, § 35 (enacting RCW 15.09.055 to authorize entry of agreements with Indian tribes to eradicate horticultural pests and diseases); LAWS OF 1999, ch. 184, § 3 (enacting RCW 26.52.010, defining a "foreign protection order" to include orders issued by tribal courts). This legislative history, although not controlling, does not demonstrate the intent to include Indian tribes within RCW 10.43.040.

Moses counters this statutory analysis by arguing we have not previously relied on the statute's explicit language to determine its scope. To support this argument, Moses relies upon our previous decisions in *State v. Caliguri*, 99 Wn.2d 501, 664 P.2d 466 (1983) and *State v. Ivie*, 136 Wn.2d 173, 961 P.2d 941 (1998). In *Caliguri*, we examined whether a prior federal racketeering conviction barred a subsequent prosecution by the State for arson where the arson had been an element in the racketeering conviction. We focused our analysis on the considerations preventing double jeopardy from prosecutions in foreign countries and other states. We concluded these considerations applied with equal force to federal jurisdiction and held the language "in another state or country" included prosecutions by the federal government. *Caliguri*, 99 Wn.2d at 511-12.

In *Ivie*, the defendants, both enlisted in the military, were subjected to nonjudicial punishment for violating the puni-

tive articles of the Uniform Code of Military Justice, 10 U.S.C. § 815. The issue we examined was whether "nonjudicial punishment" amounted to a criminal prosecution under the double jeopardy statute. We held a second prosecution by the State for the same conduct was barred by RCW 10.43.040. *Ivie*, 136 Wn.2d at 187. The *Ivie* decision, to the extent it addressed sovereignty, relied upon *Caliguri* for the proposition that "the United States military qualifi[ed] as the equivalent of another state or country for purposes of [RCW 10.43.040]." *Ivie*, 136 Wn.2d at 177.

Neither *Caliguri* nor *Ivie* compel the extension of RCW 10.43.040 to tribal prosecutions. Tribal courts are subject to unique restrictions not present in prosecutions by the federal government. Unlike federal courts, under the Indian Civil Rights Act of 1968, 25 U.S.C. § 1302(7), tribal courts may not impose penalties exceeding one year of incarceration or $5,000 in fines. This moots the chief concern underlying the double jeopardy statute that prosecution by dual sovereigns may unfairly result in excessive penalties. In some cases, applying the statute to tribal prosecutions might diminish penalties for serious crimes. Tribal courts are, therefore, distinguishable from federal courts and the reasoning of *Caliguri* and *Ivie* does not support extending RCW 10.43.040 to tribal convictions.

Moses finds some support for his argument in cases from other states with statutes sharing language similar to our double jeopardy statute. The Colorado Supreme Court held its double jeopardy statute applied to prosecutions by Indian tribes. The Colorado court found its legislature had not explicitly included Indian tribes within the language of the statute. But, because the Colorado Legislature may have been uncertain as to the nature of tribal sovereignty, the court concluded Indian tribes were among the sovereigns included in Colorado's statute. *People v. Morgan*, 785 P.2d 1294, 1297 (Colo. 1990). The Alaska Court of Appeals followed Colorado's reasoning and held its double jeopardy statute also included tribes. *Booth v. State*, 903 P.2d 1079, 1086 (Alaska Ct. App. 1995).

We are unpersuaded that Colorado's approach applies to Washington's double jeopardy statute. Colorado and Washington have not taken similar approaches to concurrent state and tribal jurisdiction. Once Congress made it possible to do so, Washington assumed partial, nonconsensual, concurrent jurisdiction over tribal reservations in 1963.[3] *See* RCW 37.12.021. In contrast, Colorado delayed assuming criminal jurisdiction within reservations until 1984. *See* Pub. L. No. 98-290, 98 Stat. 201 (codified as amended at 25 U.S.C. § 668 (1984)); *People v. Luna*, 683 P.2d 362, 363-65 (Colo. Ct. App. 1984) (holding Colorado did not have criminal jurisdiction over offenses committed by the tribal members on tribal reservation because it had not acted to assume jurisdiction under Public Law 280). The Colorado Supreme Court's decision in *Morgan* is consistent with its legislature's demonstrated intent to refrain from asserting criminal jurisdiction over tribal members, but does not support Moses' interpretation of the Washington statute.

█ Considering the historic context of the statute and the Legislature's actions since its enactment, we conclude Indian tribes are not "another state or country" within the meaning of RCW 10.43.040 and Moses' conviction was not barred. The Legislature did not include Indian tribes among the sovereigns addressed when the statute was enacted and, although the Legislature has amended other statutes to include Indian tribes, it has not amended this one. Implicitly including Indian tribes within RCW 10.43.040 is incompatible with our analysis of the statute.

Our conclusion does not detract from either the sovereignty of Indian tribes or the authority of tribal courts. Tribes, as unique sovereigns, retain the ability to create and prescribe laws for their members and to punish violations of those laws. However, Washington's double jeopardy statute will not shield tribal members from Washington prosecu-

---

[3] In 1953, Congress enacted Public Law 280, permitting states to assume jurisdiction over Indian country by statute and/or amendment of their state constitutions. Pub. L. No. 280, 67 Stat. 588 (codified as amended at 18 U.S.C. § 1162; 28 U.S.C. § 1360) (1953)).

tions where their actions violate the laws of both sovereigns. Because we find Indian tribes are not among the sovereigns included within the meaning of the double jeopardy statute, we do not reach the second question, and the issue relied upon by the Court of Appeals, whether the geographic location of an offense restricts tribal jurisdiction.

## CONCLUSION

We affirm the decision of the Court of Appeals and Moses' conviction on different grounds. We hold Indian tribes are not among the sovereigns included within the meaning of RCW 10.43.040.

ALEXANDER, C.J., and SMITH, MADSEN, SANDERS, IRELAND, BRIDGE, CHAMBERS, and OWENS, JJ., concur.