IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 85893-9-I |
| Respondent, | |
| v. | DIVISION ONE |
| ZACHARY JAMES BUTORAC, | UNPUBLISHED OPINION |
| Appellant. | |

DÍAZ, J. — Following a bench trial, Zachary Butorac was convicted of four sexual abuse offenses. Butorac now claims that the trial court deprived him of his right to confront his accuser by excluding evidence that the victim had accused another individual of molestation; that his convictions for incest and child molestation violated his right against double jeopardy; that a community custody condition violated his constitutional rights; and that the victim penalty assessment (VPA) should be struck. We remand for the trial court to strike the VPA from Butorac's judgment and sentence but otherwise we affirm.

I.     BACKGROUND

In January 2019, Butorac's daughter, M.E.,[1] told the Ferndale Police Department that he had touched her vaginal area on two occasions when she was nine and twelve years old. Two months later, the State charged him with one count

---

[1] We refer to the child victim by her initials to protect her right as a minor under RCW 7.69A.030(4).

of child molestation in the first degree, one count of child molestation in the second degree, and two counts of incest in the second degree.

Following a five-day bench trial, the court found Butorac guilty as charged. The court later entered a judgment and sentence on Butorac's convictions. As pertinent here, the court sentenced him to a term of confinement of 149 months to life, imposed a community custody condition requiring him to consent to community corrections officer (CCO) home visits to monitor his compliance with the terms of his supervision, and imposed a $500 VPA.

Butorac timely appeals.

## II.    ANALYSIS

### A.    Right to Confront Witnesses and Right to Present a Defense

Butorac asserts that, by denying his request to present evidence that M.E. had accused another individual of molesting her, the trial court deprived him of his Sixth Amendment right to present a defense, including his right to confront witnesses against him. U.S. CONST. amend. VI. We disagree.

Our Supreme Court has instructed as follows:

> "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." Chambers v. Mississippi, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). A defendant's right to an opportunity to be heard in his defense, including the rights to examine witnesses against him and to offer testimony, is basic in our system of jurisprudence. Id. "The right to confront and cross-examine adverse witnesses is [also] guaranteed by both the federal and state constitutions." State v. Darden, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002) (citing Washington v. Texas, 388 U.S. 14, 23, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967)).
> These rights are not absolute, of course. Evidence that a defendant seeks to introduce "must be of at least minimal relevance." Id. at 622. Defendants have a right to present only relevant evidence,

with no constitutional right to present irrelevant evidence. State v. Gregory, 158 Wn.2d 759, 786 n. 6, 147 P.3d 1201 (2006).

State v. Jones, 168 Wn.2d 713, 720, 230 P.3d 576 (2010).

In addition, the Constitution permits judges to "'exclude evidence that is repetitive . . . , only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues.'" Holmes v. South Carolina, 547 U.S. 319, 326-27, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006) (alterations in original) (internal quotation marks omitted) (quoting Crane v. Kentucky, 476 U.S. 683, 689-90, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986)). In such a circumstance, if the evidence in question is deemed relevant,

> ["]the burden is on the State to show the evidence is so prejudicial as to disrupt the fairness of the fact-finding process at trial." Darden, 145 Wn.2d at 622. The State's interest in excluding prejudicial evidence must also "be balanced against the defendant's need for the information sought," and relevant information can be withheld only "if the State's interest outweighs the defendant's need." Id. We must remember that "the integrity of the truthfinding process and [a] defendant's right to a fair trial" are important considerations. State v. Hudlow, 99 Wn.2d 1, 14, 659 P.2d 514 (1983). We have therefore noted that for evidence of high probative value "it appears no state interest can be compelling enough to preclude its introduction consistent with the Sixth Amendment and Const. art. 1, § 22." Id. at 16.

Jones, 168 Wn.2d at 720 (emphasis omitted).

ER 402 sets forth that "[a]ll relevant evidence is admissible." ER 401 defines "[r]elevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." ER 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

misleading the jury."

On appellate review, we apply a two-part analysis to determine if a defendant's right to present a defense has been violated. State v. Jennings, 199 Wn.2d 53, 58, 502 P.3d 1255 (2022). We first review any evidentiary ruling for abuse of discretion. State v. Arndt, 194 Wn.2d 784, 797-98, 453 P.3d 696 (2019). A trial court abuses its discretion if no reasonable person would take the view it adopted. State v. Atsbeha, 142 Wn.2d 904, 913-14, 16 P.3d 626 (2001). If we conclude that the evidentiary ruling was not an abuse of discretion, the analysis proceeds to the second step: de novo review to determine whether the defendant's rights under the Sixth Amendment to the United States Constitution were violated. Jennings, 199 Wn.2d at 58; see also Arndt, 194 Wn.2d at 797-814.

Prior to trial, Butorac requested to elicit testimony from M.E. that she had accused another individual of molesting her. Butorac stated that the purpose of doing so was to impeach the veracity of her accusations against him and to discredit M.E. As asserted in his opening statement, closing argument, and briefing here, the principal "theory of the defense" was that M.E. had fabricated that Butorac had molested her because such an accusation would help her mother obtain custody over her.

The trial court denied Butorac's request. The court concluded that Butorac had not made an adequate offer of proof that M.E.'s accusation against the other individual was false, finding that it could not "deem this to be at all relevant if it can't be established that the allegation was false." The court further found that, "[e]ven if I considered [this evidence to be] of . . . minimal relevance, . . . the State's

interest outweighs that of defendant's need to cross-examine on this issue."

The trial court did not abuse its discretion under ER 402 and ER 403. As to the former, the trial court rightly noted that Butorac never offered proof that the accusation against the third party was false. Without such proof, it was not an abuse of discretion to find that such evidence was not relevant to show that the accusations against him were "just as" false. Moreover, it is unclear to us how an accusation against a third party, who was unrelated to the purported custody dispute, had a "tendency to make the existence" of the alleged false accusations here "more probable than it would be without the evidence." ER 401. Thus, the trial court did not abuse its discretion by denying Butorac's request on this basis.

The trial court also did not err by denying Butorac's motion pursuant to ER 403. Even if evidence of the sheer fact of M.E.'s accusation of another individual molesting her was minimally relevant, it would not have substantial probative value in the absence of proof that the accusation was false or somehow connected to the custody dispute, which was the "theory of the defense."

Moreover, it was not an abuse of discretion for the court to find that this evidence was "very prejudicial" to the State's case. As the State argued, it would be "forc[ed] . . . to prove an entirely different case in this case," i.e., that M.E.'s accusation against another party was true. Furthermore, as the State also argued, the similarity in the accusations and their time frames would confuse the issues before the fact-finder, "mislead[ing] [it] about what this case is about. This case isn't about whether or not she was sexually assaulted by [the other individual]. It's about whether or not Mr. Butorac sexually assaulted her."

Thus, the trial court did not abuse its discretion by determining that prejudice to the State substantially outweighed the minimal relevance of the evidence in question and by excluding such evidence pursuant to ER 403.

Turning to the second step, excluding this evidence did not violate Butorac's Sixth Amendment rights. We emphasize that, although the Sixth Amendment grants Butorac the right to present a defense and the right to confront witnesses against him, such rights do not include the right to present irrelevant evidence. Jones, 168 Wn.2d at 720 (citing Gregory, 158 Wn.2d at 786 n. 6).

Moreover, Butorac elicited ample testimony during trial from multiple witnesses in support of his theory of the case. Butorac elicited testimony—on cross-examination and on direct examination during his case in chief—regarding M.E.'s difficult upbringing, the subsequent custody proceeding involving M.E. between him and M.E.'s mother, and the details of M.E.'s molestation accusations against Butorac from various witnesses including her high school counselor, M.E.'s mother, one of M.E.'s friends from school, a child protective services investigator, a Ferndale Police Department detective, Butorac's civil attorney, M.E.'s paternal grandparents, Butorac's wife, and Butorac himself. The State also called M.E. to testify, and Butorac had the opportunity to cross-examine and re-cross examine her.

Thus, Butorac's need for the information sought was minimal. Jones, 168 Wn.2d at 720 (quoting Darden, 145 Wn.2d at 622). In other words, this evidence was not "crucial evidence relevant to the central contention of a valid defense," because there can be no clear inferences from this irrelevant accusation against a

third party to the veracity of M.E.'s testimony.  State v. Young, 48 Wn. App. 406, 413, 739 P.2d 1170 (1987).

As there is no showing that this evidence was "necessary to present a defense," the trial court did not deprive Butorac of his rights under the Sixth Amendment.  Jennings, 199 Wn.2d at 66-67.[2]

B.    Right Against Double Jeopardy

Butorac next asserts that his convictions of child molestation and incest deprived him of his right against double jeopardy.  This is so, Butorac contends, because the underlying crimes constitute the same offense for the purpose of double jeopardy.  We disagree.

We review a claim alleging a deprivation of the right against double jeopardy de novo.  State v. Hughes, 166 Wn.2d 675, 681, 212 P.3d 558 (2009).  "The United States Constitution provides that a person may not be subject for the same offense to be twice put in jeopardy of life or limb."  Id. (citing U.S. CONST. amend. V).  "Similarly, the Washington State Constitution provides that a person may not be twice put in jeopardy for the same offense."  Id. (citing WASH. CONST. art. I, § 9).

As pertinent here, "[t]he constitutional guaranty against double jeopardy protects a defendant . . . against multiple punishments for the same offense."  State v. Noltie, 116 Wn.2d 831, 848, 809 P.2d 190 (1991).  However, "'[i]f the legislature authorized cumulative punishments for both crimes, then double jeopardy is not

---

[2] Butorac sought to have the evidence in question admitted pursuant to ER 404(b) and ER 608(b).  However, it is well-established that such evidence must be deemed relevant before it may be considered admissible under the foregoing rules. ER 402.  As set forth herein, the trial court did not err by determining that such evidence was not relevant.

offended.'" Arndt, 194 Wn.2d at 815-16 (quoting State v. Freeman, 153 Wn.2d 765, 771, 108 P.3d 753 (2005)).

To "determine legislative intent regarding whether cumulative punishment is authorized,"

> [w]e follow four analytical steps ... : (1) consideration of any express or implicit legislative intent, (2) application of the Blockburger[ v. United States, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932)], or 'same evidence,' test, (3) application of the 'merger doctrine,' and (4) consideration of any independent purpose or effect that would allow punishment as a separate offense.

Id. at 816 (citing Blockburger, 284 U.S. at 304). The right against double jeopardy "does not prohibit the imposition of multiple punishments if legislative intent can be found in one of the four double jeopardy analytical steps" articulated above. Id. at 818.

We review a claim alleging a deprivation of the right against double jeopardy de novo. Id. at 815. The party asserting such a claim bears the burden of showing a double jeopardy violation, here, Butorac. State v. Moses, 104 Wn. App. 153, 158 n.16, 15 P.3d 1058 (2001).

On appeal, Butorac primarily addresses the second analytical step, the Blockburger same evidence test. At this step, we gauge whether "the same act or transaction constitutes a violation of two distinct statutory provisions" by asking "whether each provision requires proof of a fact which the other does not." Blockburger, 284 U.S. at 304. Stated otherwise, "[i]f each offense requires proof of an element not required in the other, where proof of one does not necessarily prove the other, the offenses are not the same and multiple convictions are permitted." State v. Louis, 155 Wn.2d 563, 569, 120 P.3d 936 (2005). Thus, we

now consider whether child molestation in the first and second degree and incest in the second degree are the same in law and in fact. State v. Tili, 139 Wn.2d 107, 125, 985 P.2d 365 (1999).

For double jeopardy claims, "[w]e consider the elements of the crimes as charged and proved, not merely as the level of an abstract articulation of the elements." Freeman, 153 Wn.2d at 777. "[T]he mere fact that the same conduct is used to prove each crime is not dispositive." Id. (emphasis omitted) (citing United States v. Dixon, 509 U.S. 688, 704, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993)).

The legislature has set forth that, as pertinent here, a defendant commits child molestation in the first degree when the defendant "has . . . sexual contact *with another who is less than twelve years old* and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.083(1) (emphasis added).[3] Similarly, as pertinent here, a defendant commits child molestation in the second degree when the defendant "has . . . sexual contact *with another who is at least twelve years old but less than fourteen years old and the perpetrator is at least thirty-six months older than the victim*." RCW 9A.44.086(1) (emphasis added). Lastly, a defendant commits incest in the second degree when the defendant "engages in sexual contact *with a person whom he or she knows to be related to him or her*, either legitimately or illegitimately, as [a] . . . descendant." RCW 9A.64.020(2).

---

[3] As defined by the legislature, "sexual contact" "means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party. RCW 9A.44.010(13).

The State's charging documents herein mirrored the foregoing criminal statutes. As relevant here, the State's child molestation charges required proof that Butorac had sexual contact with M.E. when she was less than 12 years old and when she was between 12 and 14 years old, respectively. Conversely, the State's incest charges required proof that Butorac had sexual contact with M.E. with knowledge that M.E. was his daughter.

The charged crimes at issue are both legally and factually distinct. First, with regard to their distinctions as a matter of law, although the child molestation charges and the incest charges required proof that Butorac had sexual contact with M.E., the State could have proved the child molestation charges without establishing that M.E. was Butorac's daughter. Similarly, the State could have proved the incest charges without establishing that M.E. was, at the time of the incidents, less than twelve years old or between 12 and 14 years old, respectively. Thus, the child molestation charges did not incorporate the familial element of the incest charges. Put another way, as charged, child molestation and incest each includes "an element not required in the other," "proof of one does not necessarily prove the other," and such offenses are, therefore, legally distinct. Louis, 155 Wn.2d at 569.

The crimes as proven were also factually distinct. Although the State sought to prove Butorac's commission of the child molestation charges and the incest charges based on two incidences of Butorac having sexual contact with M.E., the evidence relied on by the State to prove these charges was not the same. For instance, in seeking to establish the familial relationship between M.E. and

Butorac for the purpose of the incest charges, the State elicited testimony from M.E. that Butorac was her biological father. This evidence, by itself, did not establish that M.E. was the age necessary to satisfy the State's burden of proving the charged child molestation offenses.

Similarly, in seeking to establish M.E.'s age at the time that Butorac had sexual contact with her, the State elicited testimony from M.E. that she was nine years old and twelve years old when Butorac had sexual contact with her. This testimony, by itself, did not establish Butorac's familial relationship with M.E. necessary to satisfy the State's burden of proving the charged incest offenses. Therefore, the offenses in question, as proved, were also factually distinct from one another. Thus, because the offenses in question are both legally and factually distinct, "the offenses are not the same and multiple convictions are permitted." Louis, 155 Wn.2d at 569.[4]

Butorac nevertheless contends that "[t]he child molestation and incest share the same objective statutory intent, i.e., both conduct were for purposes of sexual gratification." Although Butorac correctly identifies that both offenses require proof of sexual contact—which requires proof that such contact was done for the purpose of sexual gratification, RCW 9A.44.010(13)—his contention fails.

As set forth above, the offenses at issue set forth distinctive elements—in

_____

[4] Butorac contends that he was deprived of his right against double jeopardy because "[p]roving that Mr. Butorac engaged in sexual conduct with his daughter satisfies the elements for both first-degree child molestation statute and incest statute." However, "the mere fact that the same conduct is used to prove each crime is not dispositive." Freeman, 153 Wn.2d at 777 (citing Dixon, 509 U.S. at 704).

enacting the incest statute, the legislature sought to criminalize sexual contact with a family member. RCW 9A.64.020(2). Whereas in enacting the child molestation statutes, the legislature sought to criminalize sexual contact with a minor of specified age-ranges. RCW 9A.44.083(1), .086(1). This suggests that the legislature had distinct penological purposes in mind with regard to the foregoing statutes.[5]

Moreover, Butorac does not present adequate argument or authority in support of the proposition that the legislature had identical—or even similar—penological purposes in mind in criminalizing child molestation and incest. Given all of this, Butorac has failed to establish that the legislature did not intend to authorize cumulative punishment for the foregoing offenses.

Thus, Butorac's convictions did not deprive him of his right against double jeopardy. Accordingly, Butorac's double jeopardy claim fails.

C.    Sentencing Terms

Butorac next challenges two terms of the sentence imposed on his criminal convictions. We address each in turn.

1. Community Custody Provision

Butorac's first contention is that the community custody condition requiring

---

[5] This is further supported by related decisional authority interpreting the legislature's intent as to its purposes in criminalizing rape and incest. State v. Calle, 125 Wn.2d 769, 777-78, 888 P.2d 155 (1995) (reviewing legislative intent to determine that rape and incest are separate offenses); see also Freeman, 153 Wn.2d 765 ("Sometimes, there is sufficient evidence of legislative intent that we are confident concluding that the legislature intended to punish two offenses arising out of the same bad act separately without more analysis." (citing Calle, 125 Wn.2d at 777-78)).

him to "consent" to a search of his residence by a community correction officer (CCO) is facially unconstitutional. Butorac does not establish an entitlement to appellate relief.

Our Supreme Court's decision in State v. Cates, 183 Wn.2d 531, 354 P.3d 832 (2015), is instructive. There, our Supreme Court addressed the ripeness of an appeal of CCO search condition of community custody which read as follows: "You must consent to [Department of Corrections] home visits to monitor your compliance with supervision. Home visits include access for the purposes of visual inspection of all areas of the residence in which you live or have exclusive/joint control/access, to also include computers which you have access to." Cates, 183 Wn.2d at 533. The Court determined that "[t]he condition as written does not authorize any searches, and whether inspecting Cates' residence or computer, the State's authority is limited to that needed 'to monitor [Cates'] compliance with supervision.'" Id. at 535. In considering whether further factual development was required and considering the risk of hardship to Cates if it declined to address the merits of his challenge at the time, the Court concluded it could only examine the merits of Cates' claim if the State attempted to enforce the condition after Cates' release from confinement. Id. Thus, his challenge was not ripe for a review on the merits. Id. at 536.

Here, as set forth above, the relevant condition that the court imposed upon Butorac was as follows: "You must consent to DOC home visits to monitor your compliance with supervision. Home visits include access for the purposes of visual inspection of all areas of the residence in which you live or have exclusive/joint

control/access." At the time of this appeal, Butorac remains incarcerated pursuant to his term of confinement.

We hold that Butorac's challenge to the foregoing community custody condition is not ripe for review. The condition's language is, as relevant here, identical to that set forth in Cates.[6] As in Cates, no specific action is required by Butorac in order to comply with the condition upon his release. 183 Wn.2d at 536. Moreover, Butorac neither addresses nor mentions Cates, nor presents persuasive argument or authority in support of distinguishing his challenge to the custody condition in question. Thus, the Cates decision controls our analysis in this matter. Therefore, we hold that Butorac's challenge is not ripe for review.

We further hold that the condition is otherwise constitutional because, as in Cates, the State's authority is limited to what is necessary "to monitor [Butorac's] compliance with supervision." Id. at 535; see also State v. Cornwell, 190 Wn.2d 296, 303-04, 412 P.3d 1265 (2018) (an individual's privacy interest [in their home] can be reduced "only to the extent necessitated by the legitimate demands of the operation of the [community supervision] process."). Thus, Butorac's claim is not ripe and he does "not suffer a significant risk of hardship" if we decline to review the merits of any enforcement of the foregoing condition at a later time. Cates, 183 Wn.2d at 536.

2. Victim Penalty Assessment

Butorac's final contention is that we must remand this matter to strike the

---

[6] The only difference in the language of the community custody condition in Cates is that the scope of the search to which Cates was required to consent was "to also include computers which you have access to." 183 Wn.2d at 533.

VPA from his sentence because, as he accurately notes, the court found he was indigent at the time of sentencing.  We agree.

Formerly, RCW 7.68.035(1)(a) mandated a $500 VPA for all adults found guilty in superior court of a crime.  State v. Mathers, 193 Wn. App. 913, 918, 376 P.3d 1163 (2016).  In 2023, our legislature amended this statute to state that "[t]he court shall not impose the penalty assessment under this section if the court finds that the defendant, at the time of sentencing, is indigent as defined in RCW 10.01.160(3)."  LAWS OF 2023, ch. 449, § 1; RCW 7.68.035(4).  Further, courts are statutorily required to waive VPAs, even those imposed prior to the 2023 amendments, on the defendant's motion.  Id.; RCW 7.68.035(5)(b).

On appeal, the State does not object to Butorac's request to remand this matter in order to strike the VPA.  We accept the State's concession.  Accordingly, we remand this matter to the superior court to strike the VPA in accordance with RCW 7.68.035(4).

## III.    CONCLUSION

We remand with instructions to strike Butorac's VPA.  Otherwise, we affirm.

Díaz, J.

WE CONCUR:

Feldman, J.

Birk, J.