[No. 49234-4.   En Banc.   May 5, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. RICHARD FRANCIS CALIGURI, *Appellant.*

*Kenneth E. Kanev,* for appellant.

*William H. Griffies, Prosecuting Attorney, Jeremy Randolph, Special Deputy,* and *Chris Quinn–Brintnall, Deputy,* for respondent.

UTTER, J.—Defendant Richard Caliguri appeals his convictions of conspiracy to commit premeditated first degree murder as defined in RCW 9A.32.030(1)(a)[1] and conspiracy to commit first degree arson. He alleges error in four respects: (1) That there was insufficient evidence to support his conviction for conspiracy to commit murder; (2) that warrantless recordings of his conversations with a federal agent should have been excluded; (3) that the trial court erred in replaying the tapes in Caliguri's absence and after jury deliberations had begun; and (4) that his state trial subsequent to a federal conviction for racketeering constitutes double jeopardy. We affirm Caliguri's conviction and sentence for conspiracy to commit first degree murder. We also agree with the trial court, for different reasons, that punishment on the arson charge would constitute double jeopardy and reverse that conviction.

Caliguri moved to dismiss the information on double jeopardy grounds prior to trial. The federal indictment for racketeering, on which Caliguri was convicted, incorporated the conspiracy to commit arson charge as an element but not the conspiracy to commit murder charge.[2] The witnesses and exhibits relied upon in the state prosecution

---

[1]RCW 9A.32.030(1)(a) provides that a person is guilty of first degree murder when "[w]ith a premeditated intent to cause the death of another person, he causes the death of such person or of a third person".

[2]The federal crime of racketeering consists of two general elements: (1) a pattern of racketeering activity, defined as two or more of several defined crimes, including arson; and (2) a connection between the racketeering activity and business enterprise or interest affecting interstate commerce. *See* 18 U.S.C. § 1961 (Supp. 5, 1981) and § 1962 (1976).

were also apparently relied upon in the federal prosecution. Nonetheless, the trial court denied Caliguri's motion to dismiss and the trial went forward.

The critical evidence focused on five conversations between Paul Russell, a federal agent, and Caliguri or Ron Williams, for whom Caliguri was working. The last four of these conversations were recorded, with only Russell's consent; however, the first conversation was not, due to an electronic malfunction. Caliguri sought to exclude the recordings as made in violation of the state privacy act (RCW 9.73), but the trial court ruled that they were admissible under the exception in RCW 9.73.030(2)(b) for unlawful threats of bodily harm and requests or demands of a similar nature.

In the first conversation, between Russell and Williams, the two men made preliminary arrangements for the arson of a tavern owned by one of Williams' competitors. In the second conversation, the first to be taped, Williams advised Russell by telephone that Caliguri would assist in the arson, arranged for a meeting between Caliguri and Russell and finalized the agreement. The next three conversations took place at meetings between Caliguri and Russell and centered on the logistics and timing of the arson. At the last of these meetings, Caliguri was arrested.

In his conversations with Williams and Caliguri, Russell did speak of the possibility of a bonus if somebody in the building was killed, but there was no clear agreement to this by either Williams or Caliguri. There was general recognition by all of the men of the possibility that someone might die. In particular, Caliguri recognized at one point that "the janitor's gonna go for sure" and "a few people are gonna take a fall". See exhibit 2, at 93, quoted in Reply Brief of Appellant, at 3. At no point, however, did Caliguri state that killing the janitor or anybody else was part of his or Williams' *purpose.*

At the close of the State's case, Caliguri moved to dismiss, for insufficiency of the evidence, the charge of conspiracy to commit murder. The motion was denied and the

jury went into deliberation. It returned verdicts of guilty on both counts.

During deliberations, the court, in response to the jury's request, had an FBI agent replay the tapes. According to the agent, the full tapes were played, despite the fact that certain parts regarding Caliguri's arrest had been excluded at trial. The proceedings, at which only the court, FBI agent, and jury were present, were not recorded and Caliguri was not notified until afterward. Upon being notified, Caliguri moved to arrest judgment, but his motion was denied.

The court sentenced Caliguri to life imprisonment for the murder conviction but ruled that he should not be sentenced for the arson conviction because it arose from the same transaction. The court also ordered that Caliguri's sentence run concurrently with the sentence for his federal racketeering conviction.

I

█ The test for sufficiency of the evidence is "whether, after viewing the evidence most favorable to the State, *any rational trier of fact* could have found the essential elements of [the crime charged] *beyond a reasonable doubt.*" *State v. Green,* 94 Wn.2d 216, 221–22, 616 P.2d 628 (1980). Caliguri contends that in the present case no rational trier of fact correctly applying the law could have found intent to kill beyond a reasonable doubt.

█ The intent which must be shown to prove first degree murder under RCW 9A.32.030(1)(a)—or conspiracy to commit such murder—is an intent to kill one or more particular individuals. *See State v. Berge,* 25 Wn. App. 433, 437, 607 P.2d 1247 (1980); *cf. State v. Anderson,* 94 Wn.2d 176, 186–92, 616 P.2d 612 (1980) (conduct directed at particular individual may constitute first degree murder only under RCW 9A.32.030(1)(a)). "Intent" to kill, moreover, means more than merely "knowledge" that death will result. *See State v. Rinier,* 23 Wn. App. 102, 105, 595 P.2d 43 (1979), *rev'd on other grounds,* 93 Wn.2d 309, 609 P.2d

1358 (1980); *compare* RCW 9A.08.010(1)(a) (defining "intent") *with* RCW 9A.08.010(1)(b) (defining "knowledge"). "Intent" exists only if a known or expected result is also the actor's "objective or purpose". RCW 9A.08.010-(1)(a).

In the present case, there is sufficient evidence from which a rational trier of fact could find intent to kill the janitor. Caliguri's recognition that "the janitor's gonna go for sure" is direct evidence of knowledge that a particular individual's death would result. While there is no direct evidence that death was *intended,* intent may be inferred from circumstantial evidence. *State v. Shelton,* 71 Wn.2d 838, 839, 431 P.2d 201 (1967). Here, intent may be inferred from Caliguri's knowledge, since a trier of fact may infer that a defendant intends the natural and probable consequences of his or her acts. *See State v. Caldwell,* 94 Wn.2d 614, 617–18, 618 P.2d 508 (1980).

## II

Recordings of private conversations made without a warrant, a court order, or the consent of both parties are generally inadmissible at trial. *See* RCW 9.73.050; RCW 9.73.030. Only one party's consent is necessary, however, when the conversation "convey[s] threats of extortion, blackmail, bodily harm, or other unlawful requests or demands". RCW 9.73.030(2)(b).

Our only pertinent case construing RCW 9.73 since major changes were made in 1977 (*see* Laws of 1977, 1st Ex. Sess., ch. 363) is *State v. Williams,* 94 Wn.2d 531, 617 P.2d 1012 (1980). That case consolidated pretrial appeals by the State and defendants in both the present case and a case in which identical charges had been brought against Ron Williams, Caliguri's coconspirator. The issue presented was the admissibility of the very tape recordings at issue here. In Williams' case, the trial court had ordered suppression of all of the recordings except those parts relating to threats of extortion, blackmail, bodily harm, or other unlawful requests or demands. *Williams,* at 535–36. In Caliguri's

case, the trial court suppressed the actual recordings of Caliguri's conversations with Russell but ruled admissible Russell's testimony regarding those conversations and also ruled admissible the actual recordings of Williams' conversations with Russell. *Williams*, at 536.

We affirmed in its entirety the trial court's order in Williams' case but, regarding the order in Caliguri's case, held that the trial court erred in admitting Russell's testimony and the Williams–Russell recordings. *Williams*, at 549. As to RCW 9.73.030(2)(b), we rejected Williams' argument that the exception's reach should be limited to emergency situations but did note that the potentially catchall phrase "unlawful requests or demands" is limited to requests or demands of a nature similar to threats of extortion, blackmail, or bodily harm. *Williams*, at 548.

Because the issue was not addressed in Caliguri's case, the trial court on remand heard argument on the issue of the tapes' admissibility under RCW 9.73.030(2)(b). It then ruled that virtually all of the tapes were admissible under that exception. Caliguri now challenges this ruling as giving an overly broad scope to RCW 9.73.030(2)(b).

*Williams* controls our decision on this issue. The order in the present case, however, was entirely consistent with RCW 9.73.030(2)(b) and *Williams*. The conspiracy in the present case, as do most, if not all, conspiracies, was initiated by one coconspirator's request. Since the conspiracy and underlying request were to commit murder, a crime involving great bodily harm, any conversation "convey[ing]" the request is squarely within the scope of RCW 9.73.030(2)(b) as construed in *Williams*.

Nonetheless, Caliguri argues, the actual request was conveyed only in the second conversation while the other conversations focused solely on implementation of the request already made and agreed to. Hence, he continues, only the tape of the second conversation should have been admitted. This argument construes the word "convey" too narrowly. That word is broadly defined as "to impart or communicate either directly by clear statement or indirectly by

suggestion, implication, gesture, attitude, behavior, or appearance". *Webster's Third New International Dictionary* 499 (1971). Planning among coconspirators to implement an earlier request is behavior indirectly reaffirming and detailing the underlying request. Thus, coconspirator planning to carry out a conspiracy is within the scope of RCW 9.73.030(2)(b) whenever the underlying conspiracy and request is, *i.e.*, whenever the conspiracy began with a request to commit extortion or blackmail or to cause bodily harm. The court below thus did not err in admitting all four tapes into evidence with only minor editing.

### III

■ The trial court did err in replaying the tapes for the jury without Caliguri present. It is settled in this state that there should be no communication between the court and the jury in the absence of the defendant. *See, e.g., State v. Shutzler*, 82 Wash. 365, 367–68, 144 P. 284 (1914); *cf. State v. Smith*, 85 Wn.2d 840, 853, 540 P.2d 424 (1975) (criticizing court's exclusion of counsel during replaying of tapes for jury, even though counsel were given opportunity to comment and proceedings were recorded). Replaying the tapes in the present case without prior notice to Caliguri was highly improper.

Error requires reversal, however, only if it is prejudicial. While some of our older cases have recognized a conclusive presumption of prejudice arising from improper communications between the judge and jury (*see, e.g., State v. Wroth*, 15 Wash. 621, 623–24, 47 P. 106 (1896)), most of those cases have involved private conversations between judge and jury (*see, e.g., State v. Wroth, supra* at 622 (entry of judge into jury room)). These older cases have also been recently criticized by the Court of Appeals as not in accord with the modern view. *See State v. Saraceno*, 23 Wn. App. 473, 474–76, 596 P.2d 297 (1979) and authorities cited therein. *See also State v. Schifsky*, 243 Minn. 533, 543–45, 69 N.W.2d 89 (1955) and cases cited therein. Other jurisdictions faced with comparable precedent have seen fit

to overrule their prior decisions as ill advised. *See, e.g., Noble v. State,* 293 Md. 549, 446 A.2d 844, 853–54 (1982); *State v. Schifsky, supra* at 541–42.

In the circumstances of this case, where a third party was present during the judge's communication, we choose to follow the cases just cited and hold that a communication between judge and jury in the defendant's absence may be harmless error. To the extent that they are contrary, *State v. Wroth, supra,* and its progeny are overruled. To the extent that those cases turn on the privacy of the communication between judge and jury, we reserve judgment. Where the only persons with knowledge of what took place are the judge who erred and the jurors affected by the error, the argument for a conclusive presumption of error has more force. *See State v. Wroth, supra* at 623–24.

We also follow the harmless error standard adopted by most jurisdictions. The burden of proving harmlessness is on the State and it must do so beyond a reasonable doubt. *State v. Saraceno, supra* at 475–76; *Noble v. State, supra* at 568–69. Nonetheless, the defendant must first raise at least the possibility of prejudice. *See, e.g., United States v. Ford,* 632 F.2d 1354, 1379 n.28 (9th Cir. 1980); *cf. State v. Smith, supra* at 853 (where counsel given prior notice of communication and proceedings recorded, "at least a possibility of prejudice must be shown").

In the present case, we find the error harmless beyond a reasonable doubt. The only possibility of prejudice raised by Caliguri is that several minutes of the taped conversations which had been excluded at trial were not excluded when the tapes were replayed. The most prejudicial comment Caliguri points to is one agent's comment that he wanted "to put them f—— leg irons on that son–of–a–bitch." Reply Brief of Appellant, app. A, at 1. This seems to us merely a colorful expression of the agent's desire to place Caliguri under arrest, a desire which Caliguri's presence at trial must already have made the jury aware of. We fail to see any prejudice in this comment or the remainder of the excluded portions of the tapes.

## IV

Caliguri's final contention is that the present prosecution constitutes double jeopardy. He argues that his prior federal prosecution for and conviction of racketeering bars the subsequent state prosecution here.

### A

Initially, we reject the State's contention that *State v. Johnson*, 96 Wn.2d 926, 639 P.2d 1332 (1982) bars Caliguri's double jeopardy claim because the state and federal sentences are to run concurrently. In *Johnson*, we stated that there is no double jeopardy when sentences are made to run concurrently and do not exceed the maximum penalty for one of the offenses. *Johnson*, at 930–31. We concluded that in such a case there was no multiple punishment and hence no double jeopardy. *Johnson*, at 932.

▆ *Johnson* does not apply in the present case, however. In *Johnson* and the cases cited therein, the charges for which concurrent sentences were imposed were tried at the same time. *See Johnson*, at 930–32 and cases cited therein. Those cases thus involved solely issues of multiple punishment, not multiple prosecution. To read *Johnson* as allowing multiple prosecution as well as multiple conviction would fly in the face of the most fundamental principle underlying the double jeopardy clause.

> The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States,* 355 U.S. 184, 187–88, 2 L. Ed. 2d 199, 78 S. Ct. 221, 61 A.L.R.2d 1119 (1957). Except for the danger of convicting an innocent defendant, all of these concerns apply even where the first trial results in convic-

tion. Moreover, they are especially applicable in cases where the maximum sentence which may be imposed in the second trial is significantly greater than that imposed in the first trial. This is precisely the situation in the present case. *Compare* 18 U.S.C. § 1963(a) (1976) (maximum sentence for racketeering is 20 years) *with* RCW 9A.28.010 (conspiracy to commit first degree murder a class A felony) *and* RCW 9A.20.020 (punishment for class A felony is life imprisonment).

## B

Under the federal constitution, however, federal prosecution does not bar subsequent state prosecution, even where the prosecutions are for identical crimes. *United States v. Wheeler*, 435 U.S. 313, 316–17, 55 L. Ed. 2d 303, 98 S. Ct. 1079 (1978); *Bartkus v. Illinois*, 359 U.S. 121, 137, 3 L. Ed. 2d 684, 79 S. Ct. 676 (1959). This doctrine is known as the "dual sovereignty" doctrine and is based on the independent interests which both the federal and state sovereigns have in our federal system. *Wheeler*, at 318; *Bartkus*, at 137.

States are free nonetheless to provide greater double jeopardy protection and indeed *Bartkus* appears to invite such action. *See Bartkus*, at 138. While a few states have construed their state constitutions to provide such protection (*see, e.g., Commonwealth v. Mills*, 447 Pa. 163, 171–72, 286 A.2d 638 (1971)), most of the more than 20 states which have rejected the dual sovereignty doctrine have done so by statute. *Lavon v. State*, 586 S.W.2d 112, 115 (Tenn. 1979) and cases cited therein. *See also* Annot., *Conviction or Acquittal in Federal Court as Bar to Prosecution in State Court for State Offense Based on Same Facts—Modern View*, 6 A.L.R.4th 802, 816–24 (1981). In this state, RCW 10.43.040 provides:

> Whenever, upon the trial of any person for a crime, it appears that the offense was committed in another state or country, under such circumstances that the courts of this state had jurisdiction thereof, and that the defendant has already been acquitted or convicted upon the

merits, upon a criminal prosecution under the laws of such state or country, founded upon the act or omission with respect to which he is upon trial, such former acquittal or conviction is a sufficient defense.

█ While on its face this statute includes only prior prosecution by "another state or country" we construe the statute to include prosecution by the federal government as well. Similar statutes in a number of other states have been so construed. *See, e.g., People v. Belcher,* 11 Cal. 3d 91, 97, 520 P.2d 385, 113 Cal. Rptr. 1 (1974) ("'another state, government, or country'"); *Wilson v. State,* 270 Ind. 67, 69, 383 N.E.2d 304, 306 (1978) ("'another state, territory or country'"); *Turner v. State,* 94 Nev. 518, 519, 583 P.2d 452 (1978) (per curiam) ("'another state, territory or country'"); *People v. Lo Cicero,* 14 N.Y.2d 374, 378, 379, 200 N.E.2d 622, 251 N.Y.S.2d 953 (1964) ("'another state or country'" and "'another state, territory, or country'"); *State v. West,* 260 N.W.2d 215, 220 (S.D. 1977) ("'another state, government or country'" and "'another territory, state, or country'"). *People v. Lo Cicero, supra,* is particularly instructive because one of the statutes at issue therein was worded almost identically to our statute. *Compare* RCW 10.43.040 *with* former N.Y. Penal Law § 33 (1944), *quoted in Lo Cicero,* at 376–77. As the court in *Lo Cicero* stated, "[w]e can think of no reason why the considerations underlying the admitted immunity predicated on a former judgment of a sister State or a foreign country are less compelling in regard to the Federal jurisdiction". *Lo Cicero,* at 379. *See also Wilson v. State, supra* at 69–70.

### C

If the present prosecution is founded upon the same "act or omission" as Caliguri's racketeering conviction, therefore, it is barred by RCW 10.43.040. Unfortunately, the statute does not define "act or omission".

The test for constitutional double jeopardy is set forth in *State v. Roybal,* 82 Wn.2d 577, 512 P.2d 718 (1973). Under that test a defendant is put in double jeopardy only if the

offenses are identical "both in fact and law" or one is a lesser included offense of the other. *Roybal,* at 582. A lesser included offense is one whose elements are necessary elements of the greater offense. *Roybal,* at 583.

Under a strict construction of *Roybal,* neither conspiracy to commit murder nor conspiracy to commit arson are identical in law and fact to or lesser included offenses of racketeering. Proof of racketeering requires proof of at least two enumerated crimes, which may, but not must, be conspiracy to commit murder or arson, in the context of a business enterprise. *See* 18 U.S.C. § 1961 (Supp. 5, 1981) and § 1962 (1976). Racketeering thus requires proof of much more than conspiracy to commit murder or conspiracy to commit arson. In addition, under a literal reading of *Roybal,* neither of the latter offenses seems to be a lesser included offense of racketeering since they are not necessary, but are only permissive, elements of a racketeering charge. Recent United States Supreme Court cases, however, indicate that actual use of a permissive element makes it a lesser included offense for purposes of double jeopardy analysis. *See, e.g., Illinois v. Vitale,* 447 U.S. 410, 420–21, 65 L. Ed. 2d 228, 100 S. Ct. 2260 (1980); *Harris v. Oklahoma,* 433 U.S. 682, 53 L. Ed. 2d 1054, 97 S. Ct. 2912 (1977) (per curiam). *See also State v. Workman,* 90 Wn.2d 443, 447–48, 584 P.2d 382 (1978). Under this rule, the conspiracy to commit arson charge in the present case would be a lesser included offense of the racketeering conviction.

In any event, we construe RCW 10.43.040 as incorporating a broader double jeopardy test than that enunciated in *Roybal.* The statute prohibits multiple prosecution for any "act or omission" rather than merely the "same offense". *Compare* RCW 10.43.040 *with* Const. art. 1, § 9. The statutory language focuses on identity "in fact" rather than identity "in law". Indeed in *Roybal,* we emphasized the constitution's use of the word "offense".

> A person is not put in second jeopardy by successive trials unless they involve not only the *same act,* but also the *same offense.* There must be substantial iden-

tity of the offenses charged in the prior and in the subsequent prosecutions both in fact and in law.

*Roybal,* at 582 (quoting *State v. Barton,* 5 Wn.2d 234, 237, 105 P.2d 63 (1940)). The statutory focus on fact alone rather than fact and law is justified because crimes defined by different sovereigns may differ in certain technical respects which have little to do with the interest protected. *Cf. People v. Belcher, supra* at 100 (jurisdictional element in federal offense to be ignored because it "required proof of no additional *act*"). We therefore construe RCW 10.43-.040 to prohibit state prosecution for any offense which is in fact alone identical to or included within an offense for which a defendant has been previously prosecuted in another jurisdiction.

In the present case the conspiracy to commit murder charge was not included in fact in the federal racketeering conviction; however, the conspiracy to commit arson charge was. While no mention was made in the federal indictment of conspiracy to commit murder, the very conspiracy to commit arson charged in the present case was also charged and proven as one of the crimes underlying the federal racketeering charge. While, as noted above, conspiracy to commit arson is not necessary in law to prove racketeering, it was in fact used in the present case. This is sufficient to satisfy the test of RCW 10.43.040 and hence Caliguri's conviction of conspiracy to commit arson must be vacated.[3] The charge and conviction of conspiracy to commit murder does not constitute double jeopardy, however. That charge required proof of an act of a different character; namely, arson committed with the premeditated intent to cause a particular individual's death. We construe "act" as defined in RCW 10.43.040 to include the mental state accompanying it. *Accord, Neal v. State,* 55 Cal. 2d 11, 19, 357 P.2d

[3]The trial court thus properly refused to sentence Caliguri on the arson charge, though for the wrong reason. It apparently applied the "same transactions" test which we expressly rejected in *State v. Roybal, supra* at 581. Instead, the trial court should have dismissed the arson charge as included in fact within the previous federal conviction of racketeering.

839, 9 Cal. Rptr. 607 (1960) ("[w]hether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of [double jeopardy statute] depends on the intent and objective of the actor").

Richard Caliguri's conviction of conspiracy to commit first degree murder is affirmed and his conviction of conspiracy to commit first degree arson vacated. As he was not sentenced on the latter charge, his sentence is also affirmed.

WILLIAMS, C.J., and STAFFORD, BRACHTENBACH, DOLLIVER, DORE, and PEARSON, JJ., concur.

ROSELLINI and DIMMICK, JJ., concur in the result.