COURT OF APPEALS DIV I
2015 APR 27 AM 10: 38


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| Respondent, | ) ) | No. 70204-1-I |
| v. | ) ) | UNPUBLISHED OPINION |
| DANNY HOWARD BRANDT, | ) ) | |
| Appellant. | ) ) | FILED: April 27, 2015 |

DWYER, J. – The State charged Danny Brandt with burglary in the second degree. At trial, defense counsel sought to impeach a key State witness under ER 608(b) with specific instances of conduct underlying 20-year-old misdemeanor convictions. Because the danger of unfair prejudice outweighed any minimal probative value, and defense counsel had a full opportunity to challenge the witness's credibility through cross-examination, the trial court did not abuse its discretion or violate Brandt's right to confrontation when it excluded the proposed evidence. The contentions in Brandt's statement of additional grounds for review are also without merit. We affirm.

I

At about 5:00 a.m. on February 12, 2012, Louis Walker sat in his parked van near Fifth Avenue South in Seattle's International District. From about a block away, Walker saw a man, later identified as Danny Brandt, approach the

King Street entrance of Joe's Bar and Grill, thrust something between the door and the door jamb, and force open the door. The man disappeared inside for about one to two minutes before coming out the same door.

Walker called 911 and described the intruder as wearing a light-colored hooded sweatshirt, dark pants, and a Carhartt jacket. Walker could not see the man's face.

Seattle Police Officer Bruce Godsoe responded to the 911 report. He found that the south entrance door to the bar had been pried open. Inside, Godsoe noticed that the front of the jukebox had been pried open and the interior was damaged.

Godsoe reviewed the bar's surveillance video with several bar employees. The video showed a man entering the bar, prying open the jukebox, and then leaving. Neither Godsoe nor the employees could identify the man in the video.

Carmelita Valenzuela, a manager and bartender at Joe's, looked at the surveillance video on February 12. The police officers had already left when she arrived for work at 8:00 or 9:00 a.m. Based on the man's clothes, short stature, and long hair, Valenzuela recognized him as a regular customer who had been in the bar 10 or 20 times. Valenzuela knew that the man was a longshoreman, drove a Mustang, and drank Bud Light. The man occasionally won when playing pull tab number five and his name could have been on the records that the bar kept for the gambling commission. Valenzuela believed that she told the police on February 12 that she recognized the suspect as a regular customer. She

acknowledged, however, that she did not tell the police the other information she knew about the man.

Detective John Crumb viewed the surveillance video on February 15, 2012. Crumb described the suspect as a white male, 5'6" tall, and wearing tan Carhartt work clothes, a stocking hat, and tan leather gloves. The man had long hair, pronounced cheekbones, and a thin, sunken face. Crumb observed a "light area" around the man's mouth, but could not determine whether it was facial hair. Crumb explained that the downward angle of the security cameras made it difficult to see the suspect's face. Crumb was unable to identify the suspect, and the case went inactive on February 21, 2012.

More than a month after the burglary, Valenzuela saw the suspect walking past the bar. She immediately ran outside and confronted the man, telling him that, "We know that you're the one that broke into the jukebox," and that she recognized him from the video. The man replied, "Well, times are hard," and repeatedly apologized. Valenzuela did not contact the police at this time because she did not think it would matter.

In July 2012, while Officer Godsoe was investigating another burglary at Joe's, Valenzuela told him that she had recently seen the suspect from the February video and had confronted him outside the bar. Godsoe passed the information on to Detective Crumb, who reopened the investigation.

Crumb met with Valenzuela at Joe's on July 19, 2012, and showed her a photomontage containing Brandt's driver's license photo. Valenzuela identified

Brandt as the man in the surveillance video and the man she confronted outside Joe's. Valenzuela informed Crumb that she was "100 percent positive" of her identification.

After Valenzuela's identification, Crumb met with Brandt for about 30 minutes. Crumb then reviewed the video and observed similarities between Brandt and the person in the video. Crumb also confirmed that Brandt owned a 2007 Mustang.

The State charged Brandt with one count of burglary in the second degree. Prior to trial, defense counsel moved in limine to impeach Valenzuela under ER 608(b) with prior acts of dishonesty. The defense relied on Valenzuela's three misdemeanor convictions from 1990, 1992, and 1994 for providing false information to a police officer. Defense counsel argued that unlike ER 609, ER 608(b) contained no time limit for admissibility.

The trial court denied the motion, concluding that the proposed evidence was "irrelevant due to the passage of time." The court later clarified that it was excluding the convictions under both ER 608 and ER 609 because the prejudicial effect to the State outweighed the probative value to the defense.

The jury found Brandt guilty as charged, and the court imposed a 60-month standard range term.

II

Brandt contends that the trial court violated his right to confrontation when it excluded evidence of the specific instances of conduct underlying Valenzuela's

-4-

prior misdemeanor convictions for providing false information to a police officer. He argues that the evidence was admissible under ER 608(b) to impeach the State's key witness and that the trial court erroneously concluded that the prejudicial effect of the evidence outweighed any probative value.

Both the federal and state constitutions guarantee a criminal defendant the right to confrontation, including the right to conduct a meaningful cross-examination of adverse witnesses. State v. Darden, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002). But the right to cross-examine adverse witnesses is not absolute, and "[t]he confrontation right and associated cross-examination are limited by general considerations of relevance." Darden, 145 Wn.2d at 620-21 (citing ER 401, ER 403). We review the trial court's limitation of the scope of cross-examination for an abuse of discretion. Darden, 145 Wn.2d at 619.

ER 608(b) provides in pertinent part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness.

The trial court has discretion under ER 608(b) to permit cross-examination of a witness about conduct probative of truthfulness, including specific instances of conduct underlying convictions for dishonesty. State v. Clark, 143 Wn.2d 731, 766, 24 P.3d 1006 (2001).

Brandt sought to cross-examine Valenzuela about 1990, 1992, and 1994 misdemeanor convictions, which apparently involved providing false information and false names to police officers. "The use of an alias is a specific instance of conduct that may, depending upon circumstances, be probative of truthfulness or untruthfulness." State v. Johnson, 90 Wn. App. 54, 71, 950 P.2d 981 (1998). But to be admissible under ER 608(b), evidence must not only be probative of truthfulness, but also "not remote in time." State v. Wilson, 60 Wn. App. 887, 893, 808 P.2d 754 (1991).

Brandt's proposed cross-examination involved the witness's conduct occurring more than 20 years earlier. This was twice the number of years giving rise to the presumption of inadmissibility for convictions under ER 609(b). Although ER 608(b) does not contain a similar time limit for prior acts of dishonesty, the record contains no specific facts or circumstances illuminating how Valenzuela's conduct 20 years ago affected her current veracity. The trial court did not abuse its discretion in concluding that the danger of unfair prejudice outweighed any minimal probative value. The court did not violate Brandt's right to confrontation.

Moreover, any error in limiting cross-examination was harmless. An error under ER 608 is harmless unless "within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected." State v. Ferguson, 100 Wn.2d 131, 137, 667 P.2d 68 (1983). The failure to allow cross-examination of a State's witness under ER 608(b) is an abuse of discretion

"if the witness is crucial and the alleged misconduct constitutes the only available impeachment." Clark, 143 Wn.2d at 766. If the defendant is otherwise able to impeach the witness, "there is less need for further impeachment on cross-examination." Clark, 143 Wn.2d at 766.

Defense counsel vigorously questioned Valenzuela about all aspects of her identification of Brandt as the man in the surveillance video. Counsel's cross-examination explored the inconsistencies in Valenzuela's accounts to various people, her confusion about when certain events occurred, her admitted failure to tell the police specific details about the suspect that might have helped them find the man, her failure to tell the police about her encounter with the suspect until they were investigating an unrelated burglary, and her apparent defensiveness in responding to questioning. Under the circumstances, the jury had a full opportunity to assess Valenzuela's credibility. There is no reasonable likelihood that the cross-examination about Valenzuela's conduct 20 years ago would have changed that assessment.

### III

In his statement of additional grounds for review, Brandt contends that he was denied his due process right to be present when the jury asked to view the surveillance videos during deliberations. Brandt argues that he had a right to be present so he could object "to any improper action on the part of the prosecutor, court, or jury." See generally State v. Caliguri, 99 Wn.2d 501, 509, 664 P.2d 466

(1983) (error to replay the videotape exhibit without notice to the parties or counsel and outside the presence of the defendant).

A criminal defendant has a fundamental due process right to be present at all critical stages of a criminal proceeding. State v. Irby, 170 Wn.2d 874, 880, 246 P.3d 796 (2011). A critical stage "is one where the defendant's presence has a reasonably substantial relationship to the fullness of his or her opportunity to defend against the charge." State v. Jasper, 158 Wn. App. 518, 539, 245 P.3d 228 (2010), aff'd, 174 Wn.2d 96, 271 P.3d 876 (2012).

After closing arguments, the parties discussed how to proceed if the jury asked to view the surveillance videos after deliberations began. Defense counsel requested a procedure that would provide court control over any access to the CD containing the videos. The parties then agreed that upon request, the jury would view the videos in open court.

When the jury asked to view the videos, the court contacted counsel, but not Brandt. Defense counsel appeared, asked whether Brandt needed to be present, and informed the court, "I have no authority to waive his presence." The court replied that Brandt did not need to be present because "[i]t's not a critical stage of the proceedings." Defense counsel raised no objection, and the jury then viewed the videos.

Brandt's arguments rest on the erroneous assertion that the jury might have viewed videos that were not "entered into evidence." But Exhibit 4, the CD containing the surveillance video files, was admitted into evidence in its entirety

without objection. During the parties' discussion of how to show the videos to the jury, the deputy prosecutor informed the court that two of the files on the CD were blank, but that all of the remaining files had been shown to the jury during trial. Defense counsel raised no objection.

Nothing in the record supports an inference that the jury viewed surveillance videos during deliberations that were either not admitted into evidence or not shown at trial. Any violation of Brandt's right to be present was harmless beyond a reasonable doubt. See Irby, 170 Wn.2d at 885 (2011) (violation of right to be present at trial is subject to harmless error analysis). Because Brandt fails to identify any prejudice, his claim that he was denied effective assistance when defense counsel failed to object to his absence also fails.

Affirmed.

We concur:

-9-