IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 78114-6-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| KRISTOPHER MICHAEL MARTIN, | |
| Appellant. | FILED: July 22, 2019 |

CHUN, J. — The State charged Kristopher Martin with three counts of child molestation. The matter proceeded through trial. During the second day of deliberations, in the absence of the parties, the jury told the court it was deadlocked on one of the counts. Without informing either party of the jury's communication, the court told the jury to "try again." This ex parte, off-the-record communication violated Martin's constitutional right to appear and defend in person and by counsel. The State cannot demonstrate harmlessness beyond a reasonable doubt. Additionally, the record does not indicate on which count the jury deadlocked. We reverse.

I.
BACKGROUND

In April 2013, Martin began living with his then-girlfriend, Jessica Reid, and her three children. In January 2014, Reid's nine-year-old daughter, C.A.R., told her that she and Martin had showered and taken a bath together. Later,

C.A.R. told Reid that Martin had touched her inappropriately during the shower and bath.

On January 29, 2014, the State charged Martin with three counts of child molestation in the first degree. The matter proceeded to trial and then jury deliberations. On November 3, 2017, the trial court called the parties back to the courtroom for the jury's verdict. Prior to summoning the jury, the trial court notified the parties that it had communicated with the jury:

> We've received word from the jury that they have a verdict so I'm going to summon the jury in just a moment. I do want to tell both counsel that a little more than three hours ago shortly before 11:00 this morning the jury sent word to me through the bailiff, Ms. Martin, and the word was they thought they had reached a verdict on two counts and they were hung on the third count or believed that they were.
>
> I didn't talk to the jury directly but I sent Ms. Martin back with a message. The message was that they should try again. We then didn't hear from them for three hours and obviously they were deliberating, we could hear the voices from behind the door. But I didn't summon the parties because I simply sent the jury back to continue on the count on which they had not yet been able to reach a verdict.
>
> Now the message is they have reached a verdict on all three counts so we're ready to hear that verdict.[1]

Martin did not make any objections. The jury convicted Martin on all three counts.

Martin appeals.

## II.
## ANALYSIS

Martin argues the trial court's ex parte communication with the jury warrants reversal because it violated his constitutional right to appear and defend in person and by counsel. The State argues (1) Martin cannot raise this issue for

---

[1] This quoted passage constitutes the only record reflecting the communications at issue.

the first time on appeal, and (2) if he can raise the issue, the communication was harmless beyond a reasonable doubt. We disagree with both of the State's arguments.

A. Manifest Constitutional Error

The State contends that Martin's failure to object below precludes appellate review. While we may refuse to review an error raised for the first time on appeal, an exception exists for manifest errors affecting a constitutional right. RAP 2.5(a)(3). To obtain review under the manifest constitutional error exception, the defendant must (1) identify the constitutional error, and (2) make a plausible showing that it actually affected their trial rights. State v. Lamar, 180 Wn.2d 576, 583, 327 P.3d 46 (2014).

Because the State argues that Martin does not satisfy either requirement, we address each in turn.

1. Constitutional Error

Martin asserts the trial court's ex parte communication violated his constitutional right to appear and defend in person and by counsel. While the State concedes that the trial court violated CrR 6.15(f)[2] by responding to the

---

[2] CrR 6.15(f) provides:

(1) The jury shall be instructed that any question it wishes to ask the court about the instructions or evidence should be signed, dated and submitted in writing to the bailiff. The court shall notify the parties of the contents of the questions and provide them an opportunity to comment upon an appropriate response. Written questions from the jury, the court's response and any objections thereto shall be made a part of the record. The court shall respond to all questions from a deliberating jury in open court or in writing. In its discretion, the court may grant a jury's request to rehear or replay evidence, but should do so in a way that is least likely to be seen as a comment on the evidence, in a way that is not unfairly prejudicial and in a way that minimizes the possibility that jurors will give undue weight to such evidence. Any additional instruction upon any point of law shall be given in writing.

deliberating jury without first notifying the parties, it claims Martin cannot demonstrate manifest constitutional error because "a violation of CrR 6.15(f) does not always implicate a defendant's constitutional right." The State argues the ex parte communication here did not implicate Martin's constitutional right because the jury did not state that it "was hopelessly deadlocked," but rather that "they 'may' be hung."

Neither case law nor the record, however, supports the State's contention. The Washington Supreme Court has recognized that a court should not respond to a communication from the jury in the defendant's absence. State v. Rice, 110 Wn.2d 577, 613, 757 P.2d 889 (1988). The Court has also held that a trial court's ex parte communication with a juror constitutes an error "of constitutional dimensions, violating the defendant's right to appear and defend [themselves] in person and by counsel." Rice, 110 Wn.2d at 613. Additionally, as there is no verbatim record of the jury's communication, the record does not confirm that the jury told the court only that it may be "hung." Accordingly, Martin has adequately identified a constitutional error.

2. Actually Affecting Rights

The State additionally asserts Martin cannot demonstrate that the ex parte communication prejudiced him. Martin contends that he lost the opportunity to

---

(2) After jury deliberations have begun, the court shall not instruct the jury in such a way as to suggest the need for agreement, the consequences of no agreement, or the length of time a jury will be required to deliberate.

comment on an appropriate response and to move for a mistrial at that point in the proceedings. We agree with Martin.

For this court to review an issue as a manifest constitutional error, "[t]he defendant must make a plausible showing that the error resulted in actual prejudice, which means that the claimed error had practical and identifiable consequences in the trial." Lamar, 180 Wn.2d at 583. "'If the trial court could not have foreseen the potential error or the record on appeal does not contain sufficient facts to review the claim, the alleged error is not manifest.'" Lamar, 180 Wn.2d at 583 (quoting State v. Davis, 175 Wn.2d 287, 344, 290 P.3d 43 (2012)).

Here, the trial court could have foreseen the potential error because "[i]t is settled in this state that there should be no communication between the court and the jury in the absence of the defendant." State v. Caliguri, 99 Wn.2d 501, 508, 664 P.2d 466 (1983). Furthermore, the potential error had practical and identifiable consequences. Martin did not have an opportunity to comment on an appropriate response to the jury's communication or move for a mistrial.

The State claims Martin cannot show prejudice because the court would have denied his motion for a mistrial. But we cannot discern from the record exactly what the jury communicated to the court and vice-versa, and we cannot speculate as to how the trial court would have ruled. Additionally, Martin does not need to show the trial court would have granted his motion, but rather only a plausible showing of prejudice. Martin has made a plausible showing that the error prejudiced him at trial.

Because Martin meets both prongs of the manifest constitutional error analysis, we review his claim regarding the court's communication with the jury.

B. Right to Appear and Defend in Person and by Counsel

As discussed above, the trial court's ex parte communication with the jury violated Martin's right to appear and defend in person and by counsel. The State argues that the error does not warrant reversal because it was harmless beyond a reasonable doubt. We disagree.

While a court may constitutionally err by improperly communicating with the jury, "the communication may be so inconsequential as to constitute harmless error." State v. Bourgeois, 133 Wn.2d 389, 407, 945 P.2d 1120 (1997). The State bears the burden of proving harmlessness beyond a reasonable doubt. Caliguri, 99 Wn.2d at 509.

The State has not satisfied its burden in this case. Because the ex parte communication occurred off the record, the court's announcement to the parties set forth in the passage above constitutes the only record reflecting the communication. Though the State argues the error was harmless because the court's communication to the jury was "'negative in nature and conveyed no affirmative information' to the jury," without a verbatim record of the exchange, we cannot be convinced of this beyond a reasonable doubt. See State v. Stanley, 120 Wn. App. 312, 318, 85 P.3d 395 (2004) (providing that because the record does not contain jury deliberations, the State could not meet its burden to show that the failure to provide a required jury instruction was harmless beyond a reasonable doubt). Martin also correctly points out that he did not have an

opportunity to comment on the appropriate response to the jury or move for a mistrial. Furthermore, because the court's statement does not indicate the count on which the jury was "hung," we must reverse on all three counts.[3]

Reversed.

_Chun, J._

WE CONCUR:

_____

_Andrus, J._

---

[3] Because we reverse Martin's conviction on this ground, we do not address the merits of his other arguments regarding prosecutorial misconduct and the community custody conditions imposed in his Judgment and Sentence.