# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  58761-1-II |
| Respondent, | |
| v. | |
| CODY ALAN JOHNSON, | UNPUBLISHED OPINION |
| Appellant. | |

PRICE, J. — Cody A. Johnson appeals his termination from drug court and his subsequent convictions for two counts of physical control of a motor vehicle while under the influence and one count of driving under the influence.  He argues that his drug court termination violated his procedural due process rights in multiple ways: (1) that he did not receive adequate notice of the State's motion to terminate, (2) that he was never informed of his right to contest his termination or his alleged violations of the drug court contract, and (3) that he was never informed of his right to an evidentiary trial.  Johnson also argues that after he was terminated from drug court, the trial court erred by failing to enter findings of fact and conclusions of law related to his convictions.

While we agree that the drug court did err in some respects, we hold that any errors were harmless and affirm.

No. 58761-1-II

FACTS

I. BACKGROUND

In October 2022, the State charged Johnson with one count of physical control of a vehicle while under the influence. The State later amended the information to add an additional charge of physical control of a vehicle while under the influence and one count of driving under the influence.

In January 2023, Johnson was accepted into a drug court program. As part of his acceptance, Johnson signed a contract in which he agreed, among other things, to abstain from using drugs and consuming alcohol, to attend prescribed treatment sessions and appointments, to live in approved sober housing, and to be subject to random urinalysis (UA) testing. The contract also required that, in the event of termination, Johnson must stipulate that "the law enforcement/investigative agency reports or declarations, witness statements, field test results, lab test results, or other expert testing or examinations such as fingerprint or handwriting comparisons and pleadings" may be sufficient for the trial court to subsequently find him guilty of his pending charges. Clerk's Papers (CP) at 27. In addition, Johnson waived important basic rights in the event of termination, such as the right to a speedy trial, the right to call or question witnesses, and the right to testify.

If Johnson successfully graduated from the drug court program, all of his charges would be dismissed with prejudice. However, if he was terminated from the program, the trial court could determine his guilt based solely on the facts in the stipulated documents.

2

II. Violations of Drug Court Contract

Three months after his acceptance into the drug court program, in March 2023, Johnson relapsed and failed to maintain contact with the program. After Johnson's arrest on a drug court warrant, the drug court engaged in multiple discussions with him about his actions and whether he wanted to continue with the program. Based on these discussions, the drug court allowed Johnson to stay in the program but recommended that he be admitted to inpatient treatment. At the close of the hearing, the drug court told Johnson that inpatient treatment was his "last chance." Verbatim Rep. of Proc. (VRP) (Mar. 21, 2023) at 70.

> Well, then you are staying. . . . I have to tell you, though, I will be right up front with you, all right? I am not going to pull any punches. You staying in the program is one hundred percent conditioned on you successfully completing the inpatient. If you leave or walk away against medical advice before you are done, before you successfully complete, or anything like that at all, that's it. That's the end of the line. This is a—this is a last chance scenario. So I am going to be right—I want to be right up front with you about that, okay? I don't want to—I don't want to get you having the wrong idea.

VRP (Mar. 21, 2023) at 70.

Johnson attended inpatient treatment and was discharged on May 26, 2023. But on June 5, 2023, Johnson relapsed again and failed to appear for both a UA appointment and treatment. The next day, the State sent Johnson a "Notice of Violation" for these violations of the drug court contract.

The next month, Johnson was arrested again on a drug court warrant and appeared before the drug court; at which time, the State moved to revoke Johnson's release from jail based on his drug court violations. The drug court set the matter over for the next scheduled drug court session on July 25.

III.  TERMINATION FROM DRUG COURT

Johnson's matter was continued two weeks to August 8, 2023.  During the hearing, the State explained that it was moving to terminate Johnson from drug court due to his "noncompliance" with the drug court agreement and

> [b]asically, for absconding and fail[ing] to attend court hearings and fail[ing] to attend treatment.  He absconded from supervision and treatment.  You know, we issued a warrant for his arrest for his failure to appear, let's see June—June of this year.  And I think he—I think he appeared before the [c]ourt on July 21st of this year, I think he spent some of that time in the Hoquiam jail on a [Department of Corrections] hold.  But that's not the first—that's the second time he took off on us.  And he contracted in January 23rd of this year.  He absconded on February third, and we brought him into custody on that warrant on February 28th.  And it looks like we held him in custody and then we sent him to inpatient on April 28th.  And despite—despite that, once again, like I said, you know, in June, once he got out of inpatient and came back, he bailed on us again.

VRP (Aug. 8, 2023) at 73.  The State also argued that given that Johnson had two charges of physical control of a motor vehicle while under the influence and one charge of driving under the influence that had all been committed, "within a span of months," Johnson had "become a danger to the community."  VRP (Aug. 8, 2023) at 73-74.

The State also filed a written motion to terminate; it alleged that Johnson had: (1) "failed to attend court hearing or failed to abide by court orders or failed to comply with other conditions of the drug court contract," (2) "repeatedly failed to attend treatment sessions or failed to comply with other conditions of treatment," (3) "absconded from supervision/treatment," and (4) violated the contract in a number of other ways that were noted in attached drug court records that were "incorporated by this reference."  CP at 199.  The attached records stated that on June 5, Johnson had violated the drug court agreement by "not presenting for his UA" and not attending treatment.

4

CP at 200. It also stated that on June 7, a warrant had been issued based on Johnson's violations and for not staying in approved housing.[1]

At the hearing, Johnson's defense counsel conceded that "[t]he dates and information provided by the State [were] correct," but they argued that Johnson should remain in the program. VRP (Aug. 8, 2023) at 74. Defense counsel explained that Johnson had only recently come to terms with his mental health struggles "that [had] contributed to his inability to follow the requirements of drug court," and that he was hoping that the drug court could give him "one more chance." VRP (Aug. 8, 2023) at 74. Defense counsel also mentioned that "Mr. Johnson has suffered a lot of loss and a lot of unaddressed trauma that needs to be dealt with," and that he would be better able to overcome this if he were allowed to remain in the drug court program. VRP (Aug. 8, 2023) at 74. Defense counsel finished by saying,

> There is not much else we can say. [Johnson] acknowledges his decisions and is not contesting the sufficiency of the matter and he has not contested the facts.

VRP (August 8, 2023) at 75.

Johnson also made a statement to the drug court; he did not contest the State's accusations but instead apologized for his actions. He explained,

> I had some—family member pass away, and I dealt with that loss in—in a manner that I shouldn't have. I went out and used instead of, you know, talking to my peers

---

[1] Johnson contends that this motion to terminate was not filed until "after the termination hearing." Br. of Appellant at 9; Reply Br. of Appellant at 3. This contention is likely based on comparing the filing timestamp on the pleading from the Grays Harbor County Clerk's Office showing 4:17 p.m. with the transcript, which suggests that the hearing occurred earlier that afternoon at 3:30 p.m. We are less certain that the timestamp of the pleading is proof that the motion was not presented to Johnson during the hearing. Documents are frequently presented to the court and parties (and the courtroom clerk) during a hearing but only later timestamped as filed by the clerk's office. Without more in the record, we are inclined to assume this practice occurred here. Still, as shown below, this issue is not dispositive, so resolution is not necessary.

> in drug court and my family and talking about it in group and in treatment. And I went out and used and I shouldn't have. I got kicked out of my Oxford house. . . . And after I left the house I just—I just continued to use and just went out of my mind, but I do need help. . . . And I know I need to address my mental health issues and—with my grief and loss with my family members and close friends.

VRP (Aug. 8, 2023) at 75-76. Johnson concluded by affirming that he "want[ed] to stay in drug court" and that he hoped that he would be allowed to do so. VRP (Aug. 8, 2023) at 76.

The drug court decided to terminate Johnson. While the drug court appreciated Johnson's honesty about his mental health struggles and his relapses, it explained that a large part of its reasoning was that Johnson had left drug treatment multiple times.

> You took off on us, not once, but twice, right after treatment. And started using again. And that . . . that's not something where I can give you a third bite at the apple, I just can't. I just can't do it. . . . I hope that whatever sentence is imposed, we can structure it where you can get that treatment.

VRP (Aug. 8, 2023) at 78.

The drug court also focused on Johnson's underlying criminal charges and the resulting danger to the public.

> [I]f your underlying charges were, you know, property crimes or something, I might feel differently, but your underlying charges, in and of themselves, not only are directly related to your substance use, which is what happened here, you absconded and star[t]ed using again. But also, it's a danger. Your behavior and the charges . . . three counts of felony physical control and DUI, all three of which were under the influence of drugs of substances, right? So—and I will tell you, each one of those represented the potential for death. . . . It's clear to me from reading the police reports on all three of the incidences in question, that you were under the influence of substances and you posed a danger to the safety of everybody around and . . . that's in this particular situation.

VRP (Aug. 8, 2023) at 77-78.

After Johnson's termination, the trial court moved swiftly to find Johnson guilty of all charges.[2]

> So I am terminating you from the program. I am finding you guilty of the charges. I read the police reports for each of the three incidences. I am finding that there is proof beyond a reasonable doubt on all three. So guilty on findings on all three.

VRP (Aug, 8, 2023) at 78. The parties, including Johnson, signed a "Stipulation to Facts—Trial on the Record Upon Discharges for Non-Compliance with Therapeutic Court Contract." CP at 94. Included in the stipulations was Johnson's acknowledgment that the State's allegations against him were sufficient for the trial court to find him guilty of all charges.

> I have reviewed the reports, documents and exhibits to be submitted to the court and agree that they constitute the entire record to be considered by the court in determining my guilt or innocence in this case and *agree it is a sufficient basis* upon which the court may find me guilty.

CP at 94 (emphasis added). The final page of the stipulation included the trial court's findings that the defendant made his submission knowingly, intelligently, and voluntarily, and the court's determination that "[t]he record submitted to the [c]ourt establishes the defendant's guilt beyond a reasonable doubt and the [c]ourt finds the defendant guilty as charged." CP at 95.

Johnson appeals.

---

[2] Because of the procedural, philosophical, and practical differences between drug court and the ordinary criminal court that are further explained below, we distinguish between the two processes—upon termination from the "drug court," a criminal defendant's case returns to the jurisdiction of the "trial court."

ANALYSIS

Johnson argues that the procedure for terminating him from drug court violated his due process rights. He also contends that after his termination from drug court, the trial court failed to enter sufficient findings of fact and conclusions of law to support his subsequent convictions.

I. DUE PROCESS DURING TERMINATION FROM DRUG COURT

We have repeatedly explained that " '[a]dult drug courts are philosophically, functionally, and intentionally different from ordinary criminal courts,' " and accordingly, we must analyze issues such as notice and due process through a different lens. *State v. Starkgra*f, 29 Wn. App. 2d 30, 44, 539 P.3d 855 (2023), *review denied*, 2 Wn.3d 1032 (2024) (quoting *State v. Sykes*, 182 Wn.2d 168, 171, 339 P.3d 972 (2014)); *see also State v. Harrison*, 24 Wn. App. 2d 40, 50, 519 P.3d 244 (2022*)*. Given these differences, before addressing Johnson's arguments, we first provide a brief background on drug courts, drug court procedures, and the rights of drug court participants.

A. LEGAL PRINCIPLES

The root of the differences between drug court and ordinary criminal courts is that the two have different objectives. While criminal courts aim, in part, to punish as a way to both "deter[] criminal conduct" and to "incapacitat[e] those who engage in it," drug courts focus on treatment and are "designed to be collaborative rather than adversarial . . . ." *Sykes*, 182 Wn.2d at 171; *Harrison*, 24 Wn. App. 2d at 50.

In order to achieve these different goals, drug courts "approach treatment holistically." *Starkgraf*, 29 Wn. App. 2d at 44. In addition to attending treatment to address a participant's drug use, participants will engage in other life-skills activities like " 'community service, educational

sessions, and job training sessions.' " *Id.* (quoting Trent Oram & Kara Gleckler, Comment, *An Analysis of the Constitutional Issues Implicated in Drug Courts*, 42 IDAHO L. REV. 471, 478 (2006)). Using this holistic approach, drug courts have been shown to help participants have greater " 'prosocial decision-making skills' " that help them lead a law-abiding lifestyle. *Id.* (quoting 2 NAT'L ASS'N OF DRUG CT. PROS., ADULT DRUG COURT BEST PRACTICE STANDARDS 10 (2018)). As we have noted in the past, these differences make drug courts more successful than traditional criminal justice approaches in the appropriate case. *Harrison*, 24 Wn. App. 2d at 50 ("it is because drug courts operate outside of the traditional adversarial process that they have been more successful at treating addiction and related criminal behavior than conventional justice system interventions for some offenders").

Because of the quasi-legal nature of drug court programs, courts must strike a balance between "view[ing] [drug court] practices with flexibility and . . . less formality" and ensuring that the due process rights of drug court participants are still protected to some level. *Harrison*, 24 Wn. App. 2d at 50.

Due process is, of course, relevant when a drug court participant is facing termination from the program. *Starkgraf*, 29 Wn. App. 2d at 45. For example, in *Starkgraf*, we explained that either *before or during* the termination hearing, the participant facing termination must be informed of the State's specific reasons for seeking termination. *Id.* at 45, 47 (reaffirming our holding in *Harrison* that it is a due process violation if the participant is "never informed of the reasons for termination 'before or during' the termination " (emphasis omitted) (quoting *Harrison*, 24 Wn. App. 2d at 50)). The participant must also be informed of their right to contest both " 'the alleged

9

violations of the drug court agreement' " (that led to termination) and their termination from drug court itself through an evidentiary hearing. *Id.* at 45 (quoting *Harrison*, 24 Wn. App. 2d at 51).

Due process also requires that for termination, a participant is entitled to have the drug court determine whether the State has met its burden to prove the alleged violations by a preponderance of the evidence. *Harrison*, 24 Wn. App. 2d at 51. It also must make "written or oral findings clearly stating the evidence on which it relied in terminating [the participant] from drug court." *Id.*

We review alleged violations of due process de novo. *Starkgraf*, 29 Wn. App. 2d at 45. Procedural due process violations that occur during drug court termination proceedings are subject to constitutional harmless error analysis. *See Harrison*, 24 Wn. App. 2d at 52 n.2 (acknowledging that a constitutional harmless error argument could have been made for the drug court's violations of due process). " 'The burden of proving harmlessness is on the State and it must do so beyond a reasonable doubt.' " *State v. Irby*, 170 Wn.2d 874, 886, 246 P.3d 796 (2011) (quoting *State v. Caliguri*, 99 Wn.2d 501, 509, 664 P.2d 466 (1983)). An error is not harmless beyond a reasonable doubt if there is " 'a reasonable probability that the outcome of the trial would have been different had the error not occurred.' " *State v. Banks*, 149 Wn.2d 38, 44, 65 P.3d 1198 (2003) (quoting *State v. Powell,* 126 Wn.2d 244, 267, 893 P.2d 615 (1995)). The error cannot have caused " 'confidence in the outcome of the trial [to be] undermined.' " *Id.* (quoting *Powell*, 126 Wn.2d at 267).

B.  APPLICATION

Johnson argues that his termination violated his procedural due process rights in three ways: (1) the timing of the notice he received, (2) the sufficiency of the information he received

10

about the hearing he was entitled to, and (3) the evidentiary standard applied by the trial court. We address each one in turn.

1. Timing of the Notice of Termination

First, Johnson contends that he received inadequate notice of his termination because "[a]lthough the State listed Johnson's violations at [his termination] hearing, [he] was not made aware of them prior to the hearing." Br. of Appellant at 9. While Johnson acknowledges that he received a Notice of Violation and a verbal warning from the drug court prior to his termination, he contends these were not sufficient to provide him notice prior to the hearing.

We are unpersuaded. Generally, notice may be given before *or during* the termination hearing. *See Starkgraf*, 29 Wn. App. 2d at 45. Even if the drug court's verbal warning and the State's Notice of Violation are not technically considered notice, Johnson was given notice of the State's specific reasons *during* the August 8 termination hearing. *See id.* The State clearly explained its reasons, specifically that Johnson had absconded from the drug court program twice within a span of six months. And those reasons would not have been new to Johnson; they mirrored the drug court's warning the previous March that Johnson was in "a last chance scenario" based on his first flight from the program. VRP (Mar. 21, 2023) at 70.

Moreover, there was a long span of 18 days from the time Johnson was arrested until the August 8 termination hearing, and Johnson's defense counsel capably responded to the State's specific arguments. Johnson was also able to make a statement to the court. Both focused on responding to the State's main basis for termination (Johnson's absconding) and neither suggested surprise nor requested more time to craft a response. As defense counsel concluded, "There is not much else that we can say." VRP (Aug. 8, 2023) at 75. In light of the tolerance for "less formality"

in drug court proceedings, the State's notice during Johnson's termination hearing was sufficient to comply with due process.[3]

2. Notice of Right to Contest Alleged Violations and Termination Through Evidentiary Hearing

Second, Johnson contends that due process requires that he must be overtly informed that he had the right to an evidentiary hearing for contesting the termination or for contesting the alleged violations of the drug court agreement that supported termination. Johnson argues that the record shows that he never received any such information and, further, that we should "not assume" that he was informed of this "simply because he had an attorney represent him." Br. of Appellant at 12. Johnson further contends that the error is not harmless because "[i]f [he] had known about his right to contest the allegations and his right to an evidentiary hearing, then he may not have agreed to the facts and instead prepared a case to rebut the State's allegations." Reply Br. of Appellant at 9.

The State responds that under *Starkgraf*, " 'we can infer that [Johnson] was informed of his right to contest the termination' and of his right to an evidentiary hearing." Br. of Resp't (quoting *Starkgraf*, 29 Wn. App. 2d at 46). Additionally, the State argues that because Johnson conceded during his termination hearing that he had relapsed and broken the drug court agreement,

---

[3] Notwithstanding the language in *Starkgraf*, one could imagine that in some limited cases, receiving notice of the bases for termination for the first time *during* a hearing could implicate due process. For example, if the participant was wholly unaware of the reason and responding to it would reasonably require advance preparation, then potentially due process would require something more. But where, as here, there can be no reasonable argument that Johnson could have been surprised by the reasons behind the State's request for termination, notice during the hearing is clearly sufficient.

that "any procedural defect in the process was inconsequential and therefore, harmless." Br. of Resp't at 21.

While we agree with Johnson that the drug court likely erred when it failed to explicitly inform Johnson of his right to contest his termination or any of the alleged violations of the drug court agreement with an evidentiary hearing, we agree with the State that such error was harmless. Nothing shows that the outcome of the hearing would have been affected if the drug court had explained out loud that Johnson had this right. First, Johnson was provided the opportunity to object to termination at the August 8 hearing with the assistance of his counsel, and he did object. He provided reasons to the drug court for his leaving the program and asked for another chance.

Second, the drug court based its decision to terminate Johnson on the fact that he had absconded and that his underlying criminal charges were related to dangerous actions (driving) while using drugs. Neither of these bases were reasonably subject to being challenged in an evidentiary hearing. Even if Johnson and his counsel had not conceded that these violations occurred at the August 8 hearing, Johnson's criminal charges were already stipulated to by Johnson in his drug court contract and his absconding and re-arrest were matters of objective public record. Thus, despite the fact that the drug court may not have explicitly informed Johnson on the record about his right to an evidentiary hearing, there was no " 'reasonable probability' " that the outcome of Johnson's termination hearing would have been different. *Banks*, 149 Wn.2d at 44 (quoting *Powell*, 126 Wn.2d at 267). Any error was harmless.

3. Drug Court's Statement Regarding the State's Burden

Third, Johnson contends that "[t]he [drug]court did not determine whether [he] committed the violations by a preponderance of the evidence with the burden of proof on the State." Br. of

Appellant at 15. According to Johnson, "Nowhere did the court find—either in its oral or written rulings—that the State had this burden, let alone that the State met its burden." Br. of Appellant at 15 (boldface omitted).

While the State does not directly respond to this argument, it seems to suggest that any error was harmless. The State points out that when the drug court made its oral and written decisions to terminate, it supported its decision with the uncontested facts that "[Johnson] ran away and began using drugs" and that he had broken the drug court's rules. Br. of Resp't at 20. In other words, the State contends that the drug court's decision was supported by Johnson's own admissions.

While we agree that the drug court should have accurately articulated the evidentiary burden, any error was harmless under a constitutional harmless error standard. Not only did Johnson admit that he had committed these violations, the drug court also relied on the public records, police reports, and other evidence that Johnson stipulated could be used to support termination. The stated reasons for the drug court's decision (absconding and the nature of his criminal charges) were objectively supportable to a degree well exceeding the evidentiary standard of a preponderance. Thus, confidence in the outcome of Johnson's termination hearing was not "undermined" by the drug court's failure to state the State's burden on the record—nor would correcting its error have changed the outcome. *Banks*, 149 Wn.2d at 44. The State met its burden to show that the drug court's procedural missteps were harmless.

II. THE TRIAL COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW FOR JOHNSON'S SUBSEQUENT CONVICTIONS

Finally, separate from issues of due process, Johnson argues that after his termination from drug court, the trial court violated CrR 6.1 by failing to enter sufficient written findings of fact and conclusions of law for his convictions following the termination hearing. He makes no argument that the evidence supporting his convictions was insufficient, but he contends that the error requires remand to the trial court to enter such findings and conclusions. We disagree.

A trial court must enter written findings of fact and conclusions of law following a bench trial that are " 'sufficiently specific to permit meaningful review.' " CrR 6.1; *In re the Det. of G.D.*, 11 Wn. App. 2d 67, 69, 450 P.3d 668 (2019) (quoting *In re Det. of LaBelle*, 107 Wn.2d 196, 218, 728 P.2d 138 (1986)). A trial court's oral ruling is typically not enough, as "[a] trial court's oral opinion and memorandum opinion are no more than oral expressions of the court's informal opinion at the time rendered." *State v. Head*, 136 Wn.2d 619, 622, 964 P.2d 1187 (1998). Thus, unless the trial court's oral ruling is " 'formally incorporated into the findings, conclusions, and judgment,' " the proper remedy for a lack of written findings and conclusions is remand. *Id.* (quoting *State v. Mallory*, 69 Wn.2d 532, 533, 419 P.2d 324 (1966)).

Johnson argues that the trial court erred when it failed to enter written findings of fact and conclusions of law after it "convicted Johnson of felony driving while under the influence (DUI) and two counts of felony physical control of a vehicle while under the influence." Br. of Appellant at 2. According to Johnson, the trial court was obligated to make a written entry of findings of fact and conclusions of law; and, because the trial court did not do so here, the case should be remanded.

15

We are unpersuaded by Johnson's arguments. First, the convictions *are* supported by written findings and conclusions. The order entered after the bench trial, the Stipulation of Facts — Trial on the Record Upon Discharge for Non-Compliance with Therapeutic Court Contract, constitutes a written order for the convictions. The order expressly references Johnson's stipulation to facts and his acknowledgement that "the reports, documents and exhibits to be submitted to the court . . . [are] a sufficient basis upon which the court may find [him] guilty." CP at 94. Second, the trial court's oral ruling mirrored the written stipulation of facts. When finding Johnson guilty, the trial court orally stated that it based its decision off of the police reports (that had been stipulated to).

Johnson's principal complaint appears to be with the relative lack of detail of the trial court's legal conclusions when it stated simply, "The record submitted to the [c]ourt establishes the defendant's guilt beyond a reasonable doubt and the [c]ourt finds the defendant guilty as charged." CP at 95. And in its oral comments, the trial court was similarly brief, stating, "I am finding that there is proof beyond a reasonable doubt on all three. So guilty on findings on all three." VRP (Aug. 8, 2023) at 78.

We agree that the cursory nature of these legal conclusions raises concerns. But we must view these alleged shortcomings through a lens that is consistent with the unique nature of drug courts. This was not a contested bench trial in the traditional sense. This was a trial that followed Johnson's failure to abide by the terms of a detailed drug court contract—a contract in which he stipulated in advance to a brief process for which he waived important rights, including rights to present any evidence or witnesses. He also stipulated to the police reports and other documents that he agreed are a "sufficient basis" to find him guilty. CP at 94. In this specific context, the

trial court's Stipulation of Facts — Trial on the Record Upon Discharge for Non-Compliance with Therapeutic Court Contract, coupled with the trial court's oral ruling was "sufficiently specific to permit meaningful review," especially given that Johnson makes no argument that the evidence was insufficient to support his convictions. *See In re Det. of G.D.*, 11 Wn. App. 2d at 69. Johnson's argument fails.

CONCLUSION

We affirm Johnson's termination from drug court and his subsequent convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

MAXA, P.J.

LEE, J.